**In the Matter of EMPIRE STEEL COMPANY.**

**No. B 790-62.**

United States District Court
D. Utah,
Central Division.
March 27, 1964.

Walker E. Anderson, Asst. U. S. Atty., Salt Lake City, Utah, for the Government.

Hardin A. Whitney, Jr., Moyle & Moyle, Salt Lake City, Utah, and William G. Fowler, Salt Lake City, Utah, for petitioner Empire Steel Co.

Memorandum Decision

CHRISTENSEN, District Judge.

On December 3, 1962, Empire Steel Company filed its petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. Upon ex parte application the Referee entered an order staying suits, including suit of The Small Business Administration to foreclose a loan agreement secured by real and chattel mortgages on which there is due approximately $70,000.00. The United States of America for The Small Business Administration appropriately endeavored to have this stay vacated by the Referee. On February 4, 1964, the Referee denied its petition to dissolve the stay. From this denial the government has petitioned for review, and the matter has now been argued and submitted.

Hearings were held before the Referee on January 21 and February 4, 1964, as a continued meeting of creditors, at which the government's motion for leave to foreclose was considered. At the January 21st hearing the government objected to the receipt of evidence concerning the appraised value of the property constituting the government's security as of the time of making the loans in 1962, on the ground that the then relative values are now immaterial to the issues before the Referee.

The Referee indicated that the only basis for a valid objection to the stay would be proof that the value of the government's security had so greatly

diminished as to become insufficient,[1] and that the only issue on which the government could be heard was whether the debt was approaching or exceeding the value of the property.[2]

At the continued hearing in February the Referee received evidence of the current operations of the company. This evidence, the Referee indicated, was received only for the light it might throw upon the question of whether the security of the government was sufficient to assure ultimate payment of the debt. It appeared that little or no business was being done despite substantial monthly payments to officers and employees. The president and another officer of the corporation owe the debtor some $43,000.00. The operating loss for 1963 was approximately $20,000.00. Notwithstanding this, it was stipulated that the liquidation value of the security, assuming distress prices, still would exceed the amount due The Small Business Administration, the debtor reserving the right to offer testimony as to amount.

Testimony then was received tending to show that the land of the debtor would sell for $3500.00 an acre without fill, that it consisted of 6.94 acres and that, while the witness did not know the cost of placing fill, the land would sell for almost $4500.00 an acre if the fill were placed.

There was also evidence that the value of the property increased substantially since 1956. There was also testimony that according to the books of the debtor the total cost of the real estate of the corporation was $204,183.00, including improvements, which after depreciation left a net book value of $168,105.00. Other personal property securing The Small Business Administration loan had a book or appraised value of about $30,-000.00 (less depreciation on some of it).

Despite these claimed values, Mr. Frank N. Ellis, President of the debtor corporation, testified that he had no offers for the purchase of the debtor's property or stock, and that as far as he was personally concerned he had been unable "to come up with a plan". It was further testified by him that it would be essential in the formulation of any plan to know the outcome of litigation of Genmark Construction Company in the Federal Court in Las Vegas, and Mr. Ellis said he assumed that before any plan could be finally proposed and submitted to creditors, this matter would have to be resolved.

The transcripts of the hearings before the Referee gave no further details concerning this litigation. Inquiry by the court on review disclosed that this litigation involves claims both against and

1. "MR. WHITNEY: Your Honor, we feel the basic purpose of Chapter XI, as your Honor knows probably better than any one of us here in this room, is to establish a plan whereby all of the creditors can be protected.

"THE REFEREE: Yes. In the interest of time may I make this observation, which will be the basis of my decision:

"Chapter XI, as you perhaps are pointing out, was passed, and the referee given authority to restrain lawsuits, for the purpose of making it possible, if it can be done, for a business to continue in operation, and also to protect all creditors.

"The whole purpose of the Act will be defeated if any preferred creditor, any secured creditor, is permitted to go into court and force a foreclosure. The very purpose of the Act is defeated.

"Now, the Government on this occasion, a different branch of the Government, the same Government that passed Chapter XI, is petitioning that they be permitted to foreclose on their mortgage. They may be permitted to do so under certain circumstances, and those circumstances would be: If they can prove to the referee and to any court that the assets of the corporation, which is the basis for the loan, have so greatly diminished that their security has become insufficient.

"Now, that is the basis upon which I will decide any motion by any secured creditor who applies for an opportunity to foreclose".

2. "If the Government is ready to show that the value of the property—that the amount of the debt is approaching the value of the property or the size of debt is exceeding the value of the property, then they may come forth on that issue, and that is the only issue."

in favor of the debtor growing out of construction contracts on which the debtor hopes to obtain net recovery of some $90,000.00. The probability and amount of recovery and the duration of the litigation were indicated to be subject to considerable doubt. Mr. Ellis would not venture an opinion as to how long the settlement of the litigation would require and there was no basis on which to form any judgment whether the claims of the debtor therein would be successful.[3]

The proceeding has been pending for more than a year. No plan of arrangement has yet been submitted, and the Referee apparently has set no time for doing so.[4]

This court in a prior unpublished decision already has indicated its view that the Referee has power to issue a limited stay against The Small Business Administration.[5] In that case, following further consideration of the matter by the Referee after remand, the court on another appeal dissolved any further stay on the ground that the facts did not warrant it.

■ The relationship between Chapter X and Chapter XI proceedings and the limitations and powers of the court in reference to each are authoritatively discussed in Securities and Exch. Comm. v. United States R. & Imp. Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940). Cf. In re American Trailer

---

3. As the Referee commented, "No man knoweth how long".

4. See 11 U.S.C.A. § 735(2) "If the notice of such meeting [first meeting of creditors] is not accompanied by a copy of the proposed arrangement, the court, at such meeting, shall fix a time within which the proposed arrangement shall be filed * * *."

5. In the Matter of Bar V. Feed and Farm Supply Co., No. B 194-62, July 29, 1963, the court said among other things:
"Two questions are presented on this review. * * *
"1. Whether the Referee had jurisdiction to enjoin the foreclosure of the Small Business Administration mortgages.
"2. If so, whether the Referee abused his discretion in denying the Government's motion to dissolve the injunction theretofore entered by him. * * *
"With reference to the powers of the Administrator of the Small Business Administration, 15 U.S.C.A. § 634 insofar as pertinent here, provides: '(b) In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator may—(1) sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property;
* * *'
"The ruling on the question of jurisdiction requires a selection or reconcilia-

tion between the foregoing provisions of the Small Business Administration statute and the following provision of Chapter XI of the Bankruptcy Act: 'The court may, in addition to the relief provided by section 29 of this title and elsewhere under this chapter, enjoin or stay until final decree the commencement or continuation of suits other than suits to enforce liens upon the property of a debtor, and may, upon notice and for cause shown, enjoin or stay until final decree any act or the commencement or continuation of any proceeding to enforce any lien upon the property of a debtor.' 11 U.S.C.A. § 714.
"I am of the opinion that the Referee had jurisdiction to grant the limited stay complained of, and that the two statutes can be reconciled consistently with this holding * * *.
"Some clearer statutory language would seem to be necessary to indicate an intention on the part of Congress to nullify the stay provisions of Chapter XI of the Bankruptcy Act with reference to the Small Business Administration. Cf. Kerr v. Barnes [100 U.S.App.D.C. 51], 242 F.2d 24 (D.C.Cir. 1956); and Small Business Adm'n. v. McClellan, 364 U.S. 446, 81 S.Ct. 191, 5 L.Ed.2d 200 (1960). The limited stay as a part of the essential administration of the Bankruptcy Act and the recognition in the Act itself that any arrangement should not prejudice secured creditors hardly could be thought to be such proceedings as Congress intended to be governed by the statute relied upon by the Government.
"We must be mindful of the policy of the law which permits the Small Business Administration to protect the in-

Rentals Company, 10th Cir., 325 F.2d 47 (1963), cert. granted March 23, 1964, 32 L.W. 3325 Securities & Exchange Comm. v. American Trailers Rental Co., 84 S.Ct. 971. It is emphasized that in Chapter XI proceedings "only the rights of unsecured creditors of the debtor may be arranged and this without alteration of the status of any other classes of security holders". If there is no possibility of submitting a plan except upon the happening of some future contingency, the basis for any protracted stay simply does not exist. Otherwise, secured creditors could be indefinitely delayed, for almost every debtor hopes that something may happen in the future to relieve his plight and permit him to avoid foreclosure. Chapter XI would become simply authority for general moratoria against secured creditors rather than a means to permit appropriate submission, processing and consideration of plans of adjustment. The "status" of secured creditors then unavoidably would be affected, for status depends not only upon assurance of eventual payment but the right to payment or enforcement in point of time bearing some relationship to the conditions of the security instruments.

The Act at one time provided that the plan for arrangement was to be set out in the initial petition. In 1958 the language was amended to make the submission of a plan with the petition permissive rather than mandatory. The legislative history makes clear that this amendment was not for the purpose of fostering delay, but to facilitate the development of plans after opportunity to confer with creditors and make other immediate investigation following the initiation of the proceedings.[6] The requirement contained in the amendment that time for filing of the proposed arrangement be fixed at the first meeting of creditors[7] clearly indicates that the submission of a plan may not await some unascertainable or speculative time or condition, and further underscores the necessity for expedition in Chapter XI proceedings.

The Referee's consideration of the propriety of the stay was too narrow. The adequacy or inadequacy of the government's security was only one of the questions upon which a decision should have been predicated.

The present stay does not appear to be justified upon the record before the Referee. In re Holiday Lodge Inc., 7th Cir., 300 F.2d 516 (1962).[8] Chaffee County Fluorspar Corporation v. Athan, 10th Cir., 169 F.2d 448 (1948); cf. In re Tracy, D.C.N.D.Cal., 194 F.Supp. 293 (1961). However, in line with the circumspection observed by Judge Halbert in the last cited case, this matter is hereby remanded to the Referee for further consideration in harmony with the views herein expressed, and for a decision whether as incident to any plan susceptible of reasonably prompt processing any further limited stay could be justified.

---

terests of the Government without the limitations of injunctions, garnishments and attachments, in the general sense, which policy although not specifically applicable to the administration of Chapter XI of the Bankruptcy Act, may be given weight in the exercise of discretion. * * * "

6. 1958 U.S.Code Congressional and Administrative News, 85th Congress, 2nd Session, Volume 2, pp. 3804 et seq.

7. 11 U.S.C.A. § 735 as amended by P.L. 85-732 (1958).

8. This case questions the power of the Referee to grant a stay against secured creditors, but the facts bearing on this point are so far different than here, involving as they did a foreclosure against property of the lessor of the debtor rather than against property of the debtor, as not to militate against the prior ruling on the question of jurisdiction. However, on the question of abuse of discretion the authority is persuasive.