**In the Matter of FREED & CO., Debtor.**

**AKRON NATIONAL BANK & TRUST CO., Plaintiff-Appellant,**

v.

**FREED & CO. et al., Defendants-Appellees.**

**No. 75–2117.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 17, 1976.

Decided May 4, 1976.

---

Frederick M. Lombardi, Buckingham, Doolittle & Burroughs, Akron, Ohio, for plaintiff-appellant.

Malcolm D. Obenour, Akron, Ohio, for Freed & Co.

Weiner, Orkin, Abbate & Suit Co., Mark A. Moorstein, Shaker Heights, Ohio, for defendants-appellees.

Before WEICK, EDWARDS and CELE-BREZZE, Circuit Judges.

WEICK, Circuit Judge.

This appeal presents the question whether the Bankruptcy Court has jurisdiction in a Chapter XI proceeding to enjoin a foreclosure proceeding pending in a state court more than four months prior thereto, in order to protect equity in the mortgaged property available to general creditors.

Freed & Company (Freed) owns a tract of land in Medina County, Ohio, on which a subsidiary operates an airport known as Freedom Field. Akron National Bank (the Bank) holds a mortgage on the land to secure various notes which in July, 1974 totaled $1,276,552, including accrued interest; interest is still accruing at an 8% annual rate on those notes.

In July, 1973 the Bank commenced a foreclosure action in the Medina County Court of Common Pleas, Freed having defaulted on payment of the notes secured by the mortgage. The Court appointed Charles Booth, a vice president of the Bank, to serve as Receiver of the airport, and ordered that he retain Robert Freed (owner of Freed & Co.) to manage the airport. Mr. Booth posted a Receiver's bond of $5,000.

In November, 1973 the Court removed Mr. Booth from his duties as Receiver for the airport and retained him as Receiver over the real estate only; Freed was to pay Mr. Booth $2,000 monthly rental to use the land for the airport.

On November 13, 1974 trial of the foreclosure action was commenced in the Common Pleas Court of Medina County. On that date Freed filed a petition for an arrangement under Chapter XI of the Bankruptcy Act in United States District Court for the Northern District of Ohio. Under Fed.R. Bankruptcy 11–44 the petition when filed automatically operated as a stay of the proceedings in any court against Freed's property. Thus when the Common Pleas Court was notified of the filing of the Chapter XI petition it suspended the trial proceedings.

On November 19, 1974 the Bank filed a complaint under Rule 11–44(d) seeking relief from the stay of foreclosure. The gravamen of the complaint was that the Bankruptcy Court lacked jurisdiction over foreclosure proceedings previously commenced in the state court.

The Bankruptcy Judge found that the vacant land was worth approximately $1.2 million. He also found that as an operating airport the value was between $1.7 million and $3.6 million. Freed had entered into a contingent sales contract in November, 1974 to sell the airport to Medina County for $3.2 million. Thus the Bankruptcy Judge concluded that if the land were sold as vacant land the airport would cease to operate, the Bank would recover its money but the unsecured creditors would receive nothing from Freed in an arrangement; however, if the land were sold as part of an airport the Bank and the unsecured creditors would be paid in full and Freed would receive capital to allow it to continue as a viable business. Nevertheless, in spite of the equities favoring continuation of the stay, the Bankruptcy Judge ruled that he lacked jurisdiction to continue the stay because under Chapter XI the Court could affect only unsecured debts, and because the state court proceeding had already operated to divest Freed of the land, so the land was no longer "property of the debtor" subject to injunction under § 314 of the Bankruptcy Act, 11 U.S.C. § 714.

Upon appeal, the District Court reversed, holding that the Bankruptcy Court had jurisdiction to continue the stay of foreclosure. The Bank now appeals from the order of the District Court remanding the case to the Bankruptcy Judge for consideration of the question whether to reinstate or to modify the stay.

We are not called upon to consider whether Freed is entitled to continuation of the stay; we consider only the question whether the Bankruptcy Court has jurisdiction under § 314 to continue a stay of a state court foreclosure action in which a Receiver has been appointed over property of the debtor securing a debt. We are of the opinion that the Bankruptcy Court does have such jurisdiction.

Although the filing of the Chapter XI petition operated as a stay of enforcement of liens under Rule 11–44, that rule does not extend jurisdiction of the Bankruptcy Court, according to Rule 928. Therefore, if the Court had no jurisdiction over the land under the terms of the Bankruptcy Act, the automatic stay was without effect and the Bankruptcy Judge properly terminated the stay.

The power of the Bankruptcy Court to enjoin lien enforcement proceedings is granted by § 314 of the Bankruptcy Act:

> The court may, in addition to the relief provided by section 29 of this title and elsewhere under this chapter, enjoin or stay until final decree the commencement or continuation of suits other than suits to enforce liens upon the property of a debtor, and may, upon notice and for cause shown, enjoin or stay until final decree any act or the commencement or continuation of any proceeding to enforce any lien upon the property of a debtor.

The plain language of § 314 grants to the Bankruptcy Court power to enjoin state court proceedings against the debtor's property. However, the Bank argues that when a state court has appointed a Receiver prior to commencement of a Chapter XI proceeding, the Receiver possesses the property and it is no longer property of the debtor; therefore the Bankruptcy Court has no jurisdiction over such property.

The Bank relies upon *Straton v. New*, 283 U.S. 318, 51 S.Ct. 465, 75 L.Ed. 1060 (1931), which held that the filing of a bankruptcy petition does not confer upon the Bankruptcy Court power to enjoin enforcement of a lien obtained by judgment in a state court more than four months prior to filing the bankruptcy petition. *Straton* was decided before passage of the Chandler Act in 1938, and dealt with powers of a court in a straight bankruptcy proceeding. *Straton* did not construe § 314 of the Bankruptcy Act. The four months' requirement of *Straton* now appears in 11 U.S.C. § 11(a)(21) which provides that trustees and

receivers appointed by a bankruptcy court shall take possession from state court receivers, trustees and assignees of the debtor's property, except that if the state court receiver or trustee was appointed more than four months prior to the filing of the bankruptcy petition such delivery shall not be required.

■ In *Yoshinuma v. Oberdorfer Ins. Agency,* 136 F.2d 460 (5th Cir. 1943), the petitioner in a Chapter XI proceeding sought an order of the Bankruptcy Court requiring a state court receiver to turn over to the Bankruptcy Court the assets held by him under a state court order. The Fifth Circuit held that the Bankruptcy Court had no power to do so under Chapter XI because § 311 of the Act did not enlarge the power of the Court to do so beyond those powers granted under straight bankruptcy. We agree that the Bankruptcy Court has no power under Chapter XI to take possession of the realty from the receiver. However, we do not read *Yoshinuma* to hold that a bankruptcy court has no power to enjoin a state court proceeding where the bankruptcy court does not seek control of the property; the Fifth Circuit did not have such facts before it.

To argue that *Yoshinuma* held that a court in Chapter XI proceedings has no more power than a court in a straight bankruptcy proceeding is to attribute to the Fifth Circuit a position that contradicts the plain language of § 314 which grants power to order relief "in addition to the relief provided by section 29 of this title," which we decline to do.

The Bank also argues that under § 311, 11 U.S.C. § 711, the Bankruptcy Court takes exclusive jurisdiction over the debtor's property, and that since *Yoshinuma* held that the Court had no power to take possession of property from a state court Receiver, the Court could not exercise exclusive jurisdiction over that property, and therefore such property could not be reached under Chapter XI. The Bankruptcy Court in a Chapter XI proceeding has no power to affect the claim of a secured creditor, yet it has power to enjoin enforcement of such claim. Section 311 cannot be read to imply that a court has no jurisdiction to enjoin enforcement of a claim which it has no power to affect; section 314 grants to it such jurisdiction. *See* 8 Collier on Bankruptcy ¶ 3.22, pp. 255–56 (14th ed. 1975).

The parties have argued at length the question whether the land upon which the airport is located is property of the debtor within the meaning of § 314. The Bank argues that since constructive possession is within the Receiver the land is no longer property of the debtor. Freed argues that since the Receiver's bond has lapsed he no longer holds a valid office under Ohio law, and that title to the property remains in the debtor under Ohio law. Assuming for the moment that the Receiver has constructive possession, the question propounded by the parties is whether "property of a debtor" includes land to which the debtor has title and has actual possession, but of which the Receiver has constructive possession.

The Bank suggests that *Bayview Estates, Inc. v. Bayview Estates Mobile Homeowners Ass'n,* 508 F.2d 405 (6th Cir. 1974), decides the question in its favor. There a group of tenants, protesting a landlord's failure to maintain the property, began to pay their rent into an escrow account in the name of their attorney. The Bankruptcy Court could not exercise jurisdiction over that account in a Chapter XI proceeding instituted by the landlord because the landlord had neither title to nor actual or constructive possession of that account. That case stated that constructive possession is sufficient to establish summary jurisdiction; it did not hold that constructive possession is essential if the debtor has title or actual possession. In any event, we find it unnecessary to explore the doctrine of constructive possession under the circumstances of this case.

■ The Bankruptcy Court found that the airport as a whole could be sold for an amount which would satisfy the debts to the secured and unsecured creditors, as well as provide needed capital to permit Freed to continue as a business; however, if the land were sold as vacant land the value as

an airport would disappear. The Bankruptcy Court certainly has jurisdiction over the excess value which the airport represents above the value of the vacant land.

It is precisely this situation which Congress anticipated by granting the Bankruptcy Court power to enjoin enforcement of a lien which the Court could not affect otherwise. By enjoining a foreclosure sale in the state court the Bankruptcy Court can protect the interests of unsecured creditors and of the debtor without otherwise affecting the interest of the secured creditor or requiring him to join in the arrangement.

Because the Court has jurisdiction over this excess value and because this excess value may be lost in a state court foreclosure sale, the Court may protect its power over the excess value by enjoining a state court proceeding which would divest it of this power by destroying the excess value.

The power of a bankruptcy court to protect the equity of redemption of property subject to a state court foreclosure proceeding was recently recognized by this Court in *Chatman v. Daugherty,* 527 F.2d 691 (6th Cir. 1975); Chatman's house was ordered sold by a state court to satisfy a judgment upon a mechanic's lien. Chatman then filed a petition under Chapter XIII. This Court held that the Bankruptcy Court has jurisdiction to enjoin foreclosure of a lien upon realty even though the Bankruptcy Court cannot affect a claim secured by realty under Chapter XIII.

This principle is discussed thoroughly in *Hallenbeck v. Penn Mutual Life Ins. Co.,* 323 F.2d 566 (4th Cir. 1963), wherein it is pointed out that Chapter XIII, like Chapter XI, expands jurisdiction of a Bankruptcy Court and provides an injunction statute separate from the provisions governing the power of the court to affect claims. The injunctive power exists, according to *Hallenbeck,* to protect any equity of redemption for the benefit of the debtor's estate. *Id.* at 570.

If the encumbered property had no equity of redemption or if enjoining execution of the lien would not assist in protecting the debtor's estate, it would be an abuse of discretion for the Bankruptcy Court to continue to stay. That case is not now before us. Here the Bankruptcy Court may protect an equity value in excess of $500,000. This value belongs to the debtor and is properly under the jurisdiction of the Bankruptcy Court, which can enjoin foreclosure to protect that value. It is for this reason that Congress has given the Bankruptcy Court power to enjoin a foreclosure, regardless of the stage of the state court proceedings. As Collier points out:

> Regardless of who has custody of the debtor's property, the secured creditor is required to first procure permission of the court to foreclose on his collateral. (8 Collier on Bankruptcy ¶ 3.22, p. 261).

Section 314 of the Bankruptcy Act grants injunctive power to the Bankruptcy Court in unambiguous language, and without qualifying the power in terms of the status of the state court proceeding. In view of the fact that Congress has empowered the Bankruptcy Court to enjoin state court proceedings, we do not believe that the act of naming a Receiver in the state court operates at that time or by a lapse of time thereafter to deprive the Federal Court of that power.

We note that the Advisory Committee on the Rules of Bankruptcy interprets the power of the Bankruptcy Court as extending to stays of mortgage foreclosures and equity receiverships; *see* Advisory Committee's Note to Rule 11–44.

Because the grant of power, independent of the powers granted in straight bankruptcy proceedings, is made in unambiguous terms, we find it inappropriate to look to the provisions of Chapters I–VII to determine the extent of the Court's power under Chapter XI. Accordingly, we find that the naming of a Receiver in the state court even more than one year prior to the filing of a Chapter XI petition does not affect the jurisdiction of the Bankruptcy Court to stay enforcement proceedings.

The order of the District Court is affirmed. This case is remanded to the Bankruptcy Court for determination of the ques-

tion whether Freed is entitled to a continuation of the stay.