**In the Matter of WHITE BIRCH PARK INC., Debtor, Appellee.**

**In the Matter of Bus WHITE and Doris Marie White, Bankrupts, Appellees,**

v.

**ASSOCIATED MIDWEST, INC., Defendant and Cross Complainant, Appellants,**

v.

**WHITE BIRCH PARK, INC., Bus White and Doris Marie White, Cross-Defendants, Appellees.**

Civil A. Nos. 77–10053, 77–10054, 77–10055, 77–10059, 77–10060, 77–10061, (Consolidated) 77–10096, and 77–10097.

United States District Court,
E. D. Michigan, N. D.

Jan. 24, 1978.

---

**9.** The dismissal is, of course, without prejudice. Wright & Miller, *supra,* at § 3567, p. 453.

Arthur L. Petersen, Saginaw, Mich., for cross-defendants, appellees.

Henry H. Sills, Butzel, Levin, Winston & Quint, Detroit, Mich., Allen G. Sweig, Nachman, Munitz & Sweig, Chicago, Ill., for defendant and cross complainant, appellants.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

This appeal is from three orders of the Bankruptcy Court involving White Birch Park, Inc., a debtor under Chapter XI of the Bankruptcy Act; Bus White and Doris Marie White, debtors under Chapter XIII of the Bankruptcy Act, and Associated Midwest, Inc., a creditor of both debtors. Associated Midwest, Inc. (hereinafter referred to as A–M) appeals the February 15, 1977 and the March 2, 1977 orders entered by the Bankruptcy Court in the Chapter XI proceedings of White Birch Park. These appeals, Civil Actions No. 77–10053, No. 77–10054, No. 77–10055, No. 77–10059, No. 77–10060, and No. 77–10061, were consolidated by an order of this Court dated March 8, 1977.

A–M also appeals the May 3, 1977 order entered by the Bankruptcy Court in the Chapter XIII proceedings of Bus White and Doris Marie White. These appeals, Civil Action No. 77–10096 and No. 77–10097, were argued on the same day as the consolidated appeals.

Oral arguments having been heard on August 31, 1977 and after a review of the extensive record on appeal and of the supporting briefs submitted by the parties, the Court is now prepared to rule.

## THE CHAPTER XI APPEALS

A–M and White Birch Park entered into a construction loan agreement whereby A–M agreed to finance the construction of a mobile home park to the extent of $1,000,-000.00 over a two-year period. In return, White Birch Park agreed to convey a mortgage to all the construction site property to A–M and, as further security to A–M, Bus White and Doris White, his wife, agreed to personally guarantee the mortgage loan to A–M.

In April, 1973, the agreement was finalized and construction commenced. As a result of delays in securing construction advances from A–M, White Birch Park ceased construction in December of 1974. White Birch Park's outstanding obligation to A–M matured in April, 1975. As a result of White Birch Park's non-payment on the promissory note, A–M commenced an action to foreclose the mortgage in the United States District Court, Eastern District of Michigan, Northern Division, Bay City, Michigan in September, 1975.

On June 11, 1976, White Birch Park filed a petition under Chapter XI of the Bankruptcy Act proposing a financial arrangement among its unsecured creditors. Pursuant to Bankruptcy Rule 11–44(a), the foreclosure action commenced by A–M in this Court was stayed. On July 14, 1976, A–M filed a Complaint in Bankruptcy Court in the Chapter XI proceeding seeking relief from the stay on the foreclosure action consistent with Bankruptcy Rule 11–44(d). Debtors White Birch Park, Bus White and Doris Marie White answered A–M's complaint and counter-claimed fraud in the inception of the entire loan agreement. The Whites prayed that the transfer of the real property to White Birch Park be set aside as fraudulent, that A–M's loan and security documents be set aside as fraudulent and usurious, and that the personal guaranty executed and delivered by the Whites be set aside as fraudulent.

In October, 1976, A–M moved for the appointment of a receiver for White Birch Park and for an order directing White Birch Park to post a bond to indemnify the estate against loss. The Bankruptcy Court denied this motion stating that A–M was "not then unsecured."

A–M filed a motion to dismiss the White Birch Park Chapter XI case on the grounds that such petition was not filed in good faith and filed a motion for immediate trial and for summary judgment. All of A–M's motions were set for hearing at the pretrial conference scheduled for December 8, 1976. After an adjournment, the Bankruptcy Court entered its Preliminary Pretrial Order on January 12, 1977 which provided that all outstanding motions would be heard on February 2, 1977 if properly noticed and that all discovery should be completed by that date.

On January 13, 1977, A–M renewed all its pretrial motions, including its motions for immediate trial and for summary judgment.

On February 2, 1977, the Bankruptcy Court declined to hear the motions which A–M had noticed for determination. The Bankruptcy Court, however, considered only the relevance of approximately 220 written interrogatories filed by the debtors on January 11, 1977 and on January 21, 1977 concerning the financial status of A–M and its related companies from 1971 to the present.

On February 15, 1977, the Bankruptcy Court entered an order setting forth its findings and its decisions of February 2, 1977. On March 2, 1977, the Bankruptcy Court entered a second order setting forth its decision of February 2, 1977 in greater detail. A–M appeals both the order of February 15, 1977 and the order of March 2, 1977. Due to the identity of issues raised in each appeal, this Court ordered consolidation of the appeals.

On appeal, A–M enumerates a series of claimed errors by the Bankruptcy Court in its pretrial disposition of A–M's complaint for relief from the stay of foreclosure action. In particular, appellant contends that

the Bankruptcy Court failed to comply with Bankruptcy Rule 11–44(d) requiring "a trial at the earliest possible date" upon the filing of such a complaint seeking relief from a stay of action.

Bankruptcy Rule 11–44(a) provides: .

"(a) A petition filed under (Chapter XI) shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor, or the enforcement of any judgment against him, or of any act or the commencement or continuation of any court proceeding to enforce any lien against his property, . . . for the purpose of the rehabilitation of the debtor or the liquidation of his estate."

This automatic stay offers the debtor immediate relief and protection "from the independent attack by creditors (on the debtors' assets) pending the course of the Chapter XI arrangement." *Colonial Tavern Inc. v. Byrne*, 420 F.Supp. 44 (D.C.Mass., 1976).

Under Bankruptcy Rule 11–44(d) a creditor has the right to initiate proceedings in the Bankruptcy Court to obtain relief from the automatic stay. Rule 11–44(d) provides:

"(d) Upon the filing of a complaint seeking relief from a stay provided by this rule, the bankruptcy court shall . . . set the trial for the earliest possible date, and it shall take precedence over all matters except older matters of the same character. The Court may, for cause shown, terminate, annul, modify or condition such stay. A party seeking continuation of a stay against lien enforcement shall show that he is entitled thereto."

It is apparent to this Court that Rule 11–44(d) mandates a trial at the earliest possible date and that such a trial has precedence over all matters except older matters of the same character. This opinion concurs with the intention of the Advisory Committee whose notes reflect that the adversary proceeding commenced by the complaint for relief of the stay is subject to the priority requirement of subsection (d) of 11–44. Advisory Committee's Note, Bankruptcy Rule 11–44.

Collier on Bankruptcy analogizes the importance of a swift adversary proceeding under Rule 11–44(d) with the mandate of F.R.Civ.P. 65(b) to conduct a hearing or a preliminary injunction within ten days after a temporary restraining order has been granted without notice. Under Rule 11–44(a), the debtor has the benefit of immediate relief from any action against its property without notice to its creditors upon filing of a Chapter XI petition. Such injunctive relief prevents the depletion of the debtor's estate until such time as the Bankruptcy Court can effectuate an orderly disposition of the same. As creditors are enjoined from proceeding against the property without notice, Rule 11–44(d) provides a procedure under which the creditor has the opportunity to present its position to the Bankruptcy Court and the procedure is accorded priority over other matters to prevent irreparable harm or prejudice to the creditor's interests in the subject property. See 14 *Collier on Bankruptcy* 11–44.05 p. 11–44–20 to p. 11–44–25 (14th Ed. 1976).

Under Rule 11–44(d), the party seeking the continuation of the stay against lien enforcement has the burden of proof to establish that he is entitled to continued injunctive relief. In this case, the burden is on the debtor and, consistent with Rule 11–44(a), the debtor's burden is to establish that the property in question is essential to the rehabilitation of the debtor or to the liquidation of the debtor's estate. If such a burden is met, the Bankruptcy Court has the power to continue the stay; if the burden is not met or if the creditor establishes mitigating circumstances, the Bankruptcy Court has the power to terminate, to annul, to modify, or to condition such stay. Bankruptcy Rule 11–44(a)(d).

■ Consistent with the foregoing discussion, it is the opinion of this Court that the Bankruptcy Court erred in failing to comply with the intent and with the spirit of Bankruptcy Rule 11–44. The Bankruptcy Court effectively deprived the creditor A–M of an adversarial proceeding at the earliest possible date by permitting the debtor unlimited discovery and by adjourn-

ing various pretrial motions and pretrial conferences. A–M filed its complaint for relief on July 14, 1976 and, as of March 2, 1977, the Bankruptcy Court had failed to set the matter for a hearing on the merits.

It is the contention of the appellees that such delays were proper and that the debtors needed the intervening time for discovery in regards to their claims of fraud against A–M. However, the product of such discovery is irrelevant to a proceeding where the only issue is whether the property in question is essential to the rehabilitation of the debtor or to the liquidation of the debtor's estate.

In addition, the Bankruptcy Court is without power to grant the relief prayed for by the debtor. Under Chapter XI, the Bankruptcy Court is limited to an arrangement of the unsecured debts and does not have the power to affect or to set aside the claim of a secured creditor. *Security and Exchange Commission v. American Trailer Rentals,* 379 U.S. 594, 85 S.Ct. 513, 13 L.Ed.2d 510 (1965); *Matter of Freed & Co.,* 534 F.2d 1235, 1238 (CA 6, 1976). A–M is allegedly a secured creditor holding a first mortgage on the corporate real property. Any attempt to set aside their interests on the basis of fraud in a Chapter XI proceedings would be unfounded and fruitless.

Accordingly, the Court REVERSES the Bankruptcy Court in its failure to conduct a hearing at the earliest possible date on A–M's complaint for relief from the stay of actions and the Court also REMANDS to the Bankruptcy Court with the following instructions:

1. That the Bankruptcy Court notice and conduct a hearing on A–M's complaint at the earliest possible date from the entry of this order.

2. That, at such hearing, the Bankruptcy Court permit the debtor to introduce relevant evidence on the sole issue of whether the property in question is essential to the rehabilitation of the debtor or to the liquidation of the debtor's estate.

3. That, at the conclusion of such hearing, the Bankruptcy Court will make a finding that the property in question either is or is not essential to the rehabili-

tation of the debtor or to the liquidation of the debtor's estate.

4. That, consistent with that finding and pursuant to Bankruptcy Rule 11–44(d), the Bankruptcy Court will either continue, terminate, annul, modify, or condition such stay of action against the debtor.

It is evident to this Court that any successful rehabilitation of the debtor in Chapter XI would require the property in question to remain under the power of the Bankruptcy Court. It is equally evident that A–M has been deprived of its ability to recover any monies expended to the debtor, whether fraudulently or not. Therefore, it becomes paramount for the Bankruptcy Court to carefully consider not only the equities of both parties in the property but also all other relevant factors when formulating any possible relief.

Due to the debtor's allegations of fraud in this transaction and due to the Bankruptcy Court's jurisdictional inability to set aside or, otherwise, affect A–M's secured claim against the debtor in a Chapter XI proceeding, the Bankruptcy Court could properly modify its stay of action to permit A–M to pursue its foreclosure action in this Court with the proviso that the stay would be continued against any execution or any enforcement of any favorable judgment. Such a modification would allow White Birch Park an opportunity to fully and properly litigate its claim of fraud against A–M during the pendency of the Chapter XI arrangement of the debtor's unsecured creditors.

However, the Court believes that it is incumbent upon the Bankruptcy Court to formulate the proper remedy after the appropriate hearing required by Bankruptcy Rule 11–44 and that any attempt by this Court to dictate a remedy to the Bankruptcy Court would be inappropriate at this time.

## THE CHAPTER XIII APPEALS

Debtors Bus White and Doris Marie White filed a joint petition under Chapter XIII of the Bankruptcy Act on July 30,

1976. The debtors listed their occupations as trailer court manager and office worker respectively. Debtor Bus White claimed a weekly salary of $387.60 and debtor Doris Marie White of $170.00. These salaries were paid by White Birch Park which is a corporation principally owned by debtor Bus White and which is currently engaged in a Chapter XI arrangement, discussed *supra*. The debtors submitted $200.00 per week of their combined salaries to the supervision and control of the Bankruptcy Court in furtherance of their Chapter XIII Wage Earner Plan.

In the Chapter XI proceedings, Associated Midwest Inc. (A–M), first mortgagee on the White Birch Park real estate, challenged the propriety of the debtors to claim wage earner status. A–M contended that the debtors were utilizing Chapter XIII to draw income from the Chapter XI estate in order to pay their individual debts to the detriment of the corporate creditors. In the Chapter XI proceedings, A–M moved the Bankruptcy Court to dismiss the debtors' Chapter XIII petition or to convert that petition into straight bankruptcy. The Bankruptcy Court denied that motion and that order is now before this Court on appeal.

In addition, A–M claims the status of an unsecured creditor of the debtors in Chapter XIII as the debtors personally guaranteed the repayment of the White Birch Park construction loan to A–M. The debtors, however, assert that A–M's claim is contingent and unliquidated and that such claim should be set aside as fraudulent. The Bankruptcy Court disallowed A–M's unsecured claim of $481,339.69 on the grounds that it was contingent and unliquidated and that the administration of the Chapter XIII plan would be unduly delayed if the Court permitted A–M time to liquidate their claim. A–M appeals this order.

As a result of the two pending appeals involving the Chapter XIII plan, the parties agreed, and the Bankruptcy Court ordered a stay pending the disposition of the appeals. However, on May 3, 1977, the Bankruptcy Court found the Chapter XIII plan feasible and confirmed the same. A–M also appeals this order.

A wage earner is an individual whose principal income is derived from wages, salary or commissions. 11 U.S.C. § 1006(8). The purpose of Chapter XIII is to provide a vehicle for relief and for rehabilitation to persons dependent upon their earnings from personal services to effectuate a composition with creditors, or to procure extensions of time to pay debts, or both. See *Hallenbeck v. Penn Mutual Life Insurance Co.*, 323 F.2d 566, 570 (CA 4, 1963).

It has been the continued intention of the Congress and the continued opinion of the judiciary that Chapter XIII and the term "wage earner" should be liberally construed to encourage a greater utilization of the Wage Earners' Plan. 1959 U.S.Code Congressional and Administrative News pp. 1446–51; *In Re Reed*, 368 F.Supp. 615, 617 (ED Va.1968).

In *Reed, supra*, the District Court reviewed a number of factors in reversing a bankruptcy referee's decision that a debtor was not a wage earner under Chapter XIII. In that case, the debtor was a self-employed carpenter who worked for various individuals at an hourly rate. He had no assistants and no employer paying him a fixed weekly or monthly salary. His income was principally derived from and dependent upon his own individual effort.

In contrast, the debtors in the instant case claim to be employees of a corporation which is principally owned by them, which is currently proceeding in Bankruptcy Court under a Chapter XI arrangement and which is maintained and controlled by them as debtors in possession. The debtors, prior to the filing of the Chapter XI petition, did not draw a salary from White Birch Park. But, upon the institution of Chapter XI proceedings, debtor Bus White claimed a salary of $387.60 per week or an annual salary of $20,155.20 from the Chapter XI estate for his services to White Birch Park. Debtor Doris Marie White, upon the institution of Chapter XI proceedings, claimed a salary of $170.00 per week or an annual salary of $8,840.00 from the Chapter XI estate for her services to White Birch

Park. The debtors also claimed $490.00 per month or an annual sum of $5,880.00 additional income from other real property interests.

The total joint income of $34,875.20 is the sum represented to the Bankruptcy Court as the annual gross wages available to the Chapter XIII estate. The sum is a marked increase over the joint gross income of $14,000.00 which the debtor claimed to have earned in the prior calendar year. The increased income of the debtors upon the institution of the Chapter XI proceedings is suspect for a number of reasons. The debtors had ceased construction of new mobile home pads in December, 1974; thus, the number of units to operate and maintain remained constant. As no mobile home pads were constructed, the debtors ceased selling new mobile homes and lost a source of revenue from their commissions on such sales; thus the debtors were more dependent upon White Birch Park for their income. Further, debtor Bus White ceased operating and maintaining his excavating business; thus the debtors lost another source of income and became even more dependent upon White Birch Park for their income.

It is apparent that the debtors began to receive a sizeable income from White Birch Park, a business in serious financial trouble, at a point in time when the debtors themselves were contributing fewer personal services to it and becoming more and more dependent upon it for their livelihood. It is entirely possible that the debtors, as debtors in possession and in control of the Chapter XI estate, could pay out salaries to themselves and not render any services to White Birch Park.

Upon these facts and circumstances, it is the opinion of this Court that the debtors are not wage earners within the definition of Chapter XIII of the Bankruptcy Act, 11 U.S.C. § 1006(8), as the source of their income is not derived from wages, salary or commissions but rather it is derived from and is a return of their invested capital in White Birch Park. It is contrary to the purpose of a Chapter XIII Wage Earner Plan to permit a debtor to seek relief and rehabilitation when the debtor is not dependent upon his or her own individual labor or effort as a source of income. See *Hallenbeck v. Penn Mutual Life Insurance Co., supra ; In Re Reed, supra*. Further, it is contrary to the purpose of the Bankruptcy Act to permit a debtor, especially a debtor in possession of a Chapter XI estate, to draw from and to deplete the assets of the Chapter XI estate to satisfy personal debts and to make feasible his or her own wage earner plan in Chapter XIII.

■ Accordingly, the Court REVERSES the Bankruptcy Court and DIRECTS that the Bankruptcy Court DISMISS the Chapter XIII petition as filed by the debtors. The Court further DIRECTS that the Bankruptcy Court conduct a hearing to properly determine the amount of income the debtors may draw from the Chapter XI estate. Such a determination should reflect the amount of personal services that the debtors actually contribute to the operation of the business and should also reflect a sum comparable to the gross income earned by the debtors in prior years. Such a determination is necessary to protect not only the assets of the Chapter XI estate but also the creditors of White Birch Park.

The Court will leave to the discretion of the Bankruptcy Court whether or not to convert the debtors' existing petition into a petition for straight bankruptcy. As the Court has directed the Chapter XIII proceedings dismissed, the Court will not consider the remaining issues on appeal from the Chapter XIII proceedings.

For the reasons stated, the decisions of the Bankruptcy Court in the Chapter XI proceedings and in the Chapter XIII proceedings are REVERSED and REMANDED consistent with the instructions contained in this opinion.

IT IS SO ORDERED.