In re A. J. N. ENTERPRISES, INC.
d/b/a The Front Page, Debtor.

No. 78–3901.

United States District Court,
E. D. Louisiana.

Feb. 8, 1978.

Emile L. Turner, Jr., New Orleans, La., for appellant, A.J.N. Enterprises, Inc. d/b/a The Front Page.

Charles E. Richards, New Orleans, La., for appellee, Bank of Louisiana in New Orleans.

DUPLANTIER, District Judge.

This appeal from the bankruptcy court by the Chapter XI debtor concerns the order of the bankruptcy judge modifying the Rule 11–44 stay to allow the Bank of Louisiana to foreclose on the real property, furniture, and fixtures of "The Front Page", an entertainment facility that is the main asset of the debtor, A.J.N. Enterprises, Inc. After a hearing on December 20, 1978, the order of the bankruptcy judge was affirmed.

The debtor operates a disco lounge known as "The Front Page". The Bank of Louisiana has a security interest in the property to secure a debt of approximately $880,-000.00, a debt which has been in default since at least August 15, 1978, and is substantially increasing as a result of accumulations of interest every three months. The debtor filed this Chapter XI proceeding on September 15, 1978. After several meetings wherein it became apparent that the business would not be able to service its debt and pay operating expenses, that business was not improving and that attempts to sell or refinance the operation would not meet with early success, the bankruptcy judge modified the automatic stay on November 28, 1978, to allow the bank to foreclose on its collateral.

The debtor urges that the bankruptcy judge did not give it sufficient time to develop a plan for reorganization or make an arrangement with the bank, which was persistent in seeking to foreclose. Relying on an apparently large equity of the debtor in the property [1] and citing *Matter of Freed & Co.*, 534 F.2d 1235 (6th Cir. 1976), the debtor contends that since the bank was not in imminent jeopardy of losing its investment, it should have been further stayed from collecting the debt.

The equity of the debtor in the collateral is just one factor which is to be considered by a court in deciding whether a secured creditor is to be stayed in a reorganization proceeding.[2] Debtor equity is an important

1. The debtor asserts that the collateral is worth over $1,200,000.00. The bank argued in the bankruptcy court that it is undersecured. For the purposes of this opinion, it is assumed that the bank had adequate collateral to secure its debt.

2. This was recognized by the court in *Freed, supra.* The court did not consider whether the "equities" supported a continued stay, only that the bankruptcy court had jurisdiction to

make this decision. The court remanded the case for such a determination. For a detailed discussion of factors courts consider in ruling on debtor use of collateral *see* Murphy, *Restraint and Reimbursement: The Secured Creditor in Reorganization and Arrangement Proceedings*, 30 Bus.Law. 15 (1974); Webster, *Collateral Control Decisions in Chapter Cases Clear Rules v. Judicial Discretion*, 51 Am. Bankr.L.J. 197 (1977).

consideration, as it is one means by which a secured creditor can be protected from erosion of his collateral.[3]

However, the fact that the secured creditor is adequately protected does not justify an indefinite stay absent some reasonable prospect that the debtor can be reorganized.[4] Throughout the proceedings in the bankruptcy court the debtor presented vague possibilities for making an arrangement with the bank, possibilities which kept changing and were never realized. On this record, the bankruptcy judge correctly decided that a continued stay was not justified. While a fully developed plan probably could not have been expected in this case by the time the stay was lifted, something more than the unsubstantiated hopes that were presented by the debtor was required.

---

**3.** The concept of adequate protection is highlighted in the new bankruptcy law. Act of Nov. 6, 1978, Pub.L. No. 95–598, § 361, 92 Stat. 2569 (1978) (to be codified in 11 U.S.C. § 361).

**4.** *See In re Empire Steel Company*, 228 F.Supp. 316 (D.Utah 1964).