In the Matter of WHITE BIRCH PARK, INC., Debtor-Appellee.

In the Matter of Bus WHITE and Doris Marie White, Debtors-Appellees,

v.

ASSOCIATED MIDWEST, INC., Defendant and Complainant-Appellant,

v.

WHITE BIRCH PARK, INC., Bus White and Doris Marie White, Cross-Defendants-Appellees.

Civ. A. Nos. 78–40066, 78–40074.

United States District Court, E. D. Michigan, S. D.

April 30, 1979.

Arthur L. Petersen, Saginaw, Mich., for debtors-appellees.

Henry H. Sills, Butzel, Fruehauf, Keidan, Simon, Myers & Graham, Detroit, Mich., Allan G. Sweig, Nachman, Munitz & Sweig, Chicago, Ill., for defendant and complainant-appellant.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

This appeal is from two orders of the Bankruptcy Court involving White Birch Park, Inc., a debtor under Chapter XI of the Bankruptcy Act; Bus White and Doris Marie White, debtors under Chapter XIII of the Bankruptcy Act and Associated Mid-

west, Inc., a creditor of both debtors. Associated Midwest, Inc., (hereinafter, A–M) has appealed the June 7, 1978 order of the Bankruptcy Court in the Chapter XIII proceedings and has appealed the June 14, 1978 order of the Bankruptcy Court in the Chapter XI proceedings. Both orders of the Bankruptcy Court emanate from this Court's remand of January 24, 1978 and of May 22, 1978.

On January 24, 1978, the Court reversed and remanded the Chapter XI proceedings of White Birch Park to the Bankruptcy Court and directed the Bankruptcy Court to conduct a hearing on A–M's complaint for relief from an automatic stay of proceedings consistent with Bankruptcy Rule 11–44. *In the Matter of White Birch Park*, 443 F.Supp. 1342 (E.D.Mich. 1978) (Harvey, J.). The Bankruptcy Court conducted its hearing on February 21, March 6, 7 and 14, 1978 and set forth its Opinion and Order on June 14, 1978.

On January 24, 1978, the Court also reversed the Bankruptcy Court and directed that the Bankruptcy Court dismiss the Chapter XIII petitions as filed by the debtors on the grounds that the debtors were not wage earners as defined by the Bankruptcy Act. *In the Matter of White Birch Park, supra.* On February 9, 1978, the Court summarily denied a motion to reconsider the Chapter XIII dismissal for debtors' failure to demonstrate a palpable defect by which the Court was mislead or that a different disposition of the action must result from a correction thereof. On March 9, 1978, the Court set aside its denial of debtors' motion for reconsideration as a result of facts presented by debtors to the Court in support of their motion for stay of execution pending appeal to the Sixth Circuit Court of Appeals. In setting aside its denial of reconsideration, the Court granted a limited rehearing on the issue of whether the Court should remand the Chapter XIII proceedings to the Bankruptcy Court for a factual determination of whether debtors Bus White and Doris Marie White were entitled to assert wage earner status and, if so, what amount of compensation may debtors draw from the Chapter XI estate of White Birch Park, Inc. On May 22, 1978, upon a review of the supplemental briefs of the parties, the Court vacated its order directing the dismissal of the Chapter XIII proceedings and remanded the said proceedings to the Bankruptcy Court for a factual determination of whether the individual debtors could assert wage earner status under Chapter XIII. On June 7, 1978, the Bankruptcy Court set forth its findings that debtors Bus White and Doris Marie White were wage earners and were entitled to receive gross sums of $220.00 per week and $100.00 per week respectively as compensation from the Chapter XI estate.

In challenging the orders of the Bankruptcy Court, A–M filed its appeal briefs on July 31, 1978 and on August 10, 1978. Appellee debtors have failed to serve or to file a response brief in either the Chapter XI or the Chapter XIII proceedings as required by Bankruptcy Rule 808(2). On March 14, 1979, the Court found that the instant appeals had been unduly delayed by appellee's conduct and that, consistent with appellant's request, the Court would decide the instant appeals upon the record and briefs as submitted without oral argument.

Upon a review of the record, the Court is prepared to rule.

### THE CHAPTER XI APPEAL

A–M and White Birch Park entered into a construction loan agreement whereby A–M agreed to finance the construction of a mobile home park to the extent of $1,000,-000.00 over a two-year period. In return, White Birch Park agreed to convey a mortgage to all the construction site property to A–M and, as further security to A–M, Bus White and Doris White, his wife, agreed to personally guarantee the mortgage loan to A–M.

In April, 1973, the agreement was finalized and construction commenced. As a result of delays in securing construction advances from A–M, White Birch Park ceased construction in December of 1974. White Birch Park's outstanding obligation to A–M matured in April, 1975. As a result

of White Birch Park's non-payment on the promissory note, A–M commenced an action to foreclose the mortgage in the United States District Court, Eastern District of Michigan, Northern Division, Bay City, Michigan in September, 1975.

On June 11, 1976, White Birch Park filed a petition under Chapter XI of the Bankruptcy Act proposing a financial arrangement among its unsecured creditors. Pursuant to Bankruptcy Rule 11–44(a), the foreclosure action commenced by A–M in this Court was stayed. On July 14, 1976, A–M filed a Complaint in Bankruptcy Court in the Chapter XI proceeding seeking relief from the stay on the foreclosure action consistent with Bankruptcy Rule 11–44(d). Debtors White Birch Park, Bus White and Doris Marie White answered A–M's complaint and counterclaimed fraud in the inception of the entire loan agreement. The Whites prayed that the transfer of the real property to White Birch Park be set aside as fraudulent, that A–M's loan and security documents be set aside as fraudulent and usurious, and that the personal guaranty executed and delivered by the Whites be set aside as fraudulent.

As a result of numerous delays in the Bankruptcy Court,[1] A–M was unable to secure a hearing on its complaint and appealed a denial of a motion for an immediate trial. Interpreting Bankruptcy Rule 11–44, the Court reversed and remanded the action to the Bankruptcy Court for a hearing on A–M's complaint for relief from the automatic stay.

Following its hearing the Bankruptcy Court found that the property of the debtor White Birch Park was essential to the rehabilitation of the debtor, or to the liquidation of its estate. The Bankruptcy Court determined that the value of the property exceeded the amount of the net monies advanced by A–M to White Birch Park and that A–M was totally secured. The Bankruptcy Court further modified the stay of action against the debtor to permit A–M to

pursue its foreclosure action in this Court but continued the stay as to the enforcement or execution of any favorable judgment. The Bankruptcy Court retained jurisdiction over the debtor's property and instructed the debtor to continue in business under the supervision and control of a court-appointed receiver.

On appeal, A–M contends that the Bankruptcy Court exceeded the instructions on remand as directed by this Court by admitting irrelevant evidence and by discussing the feasibility of the debtor's rehabilitation. A–M further contends that certain findings made by the Bankruptcy Court are erroneous and are not supported by the evidence.

■ The sole issue before the Bankruptcy Court on remand was whether the property in question was essential to the rehabilitation of the debtor or to the liquidation of the debtor's estate. In resolving that issue, certain factors are relevant: the value of the property, the amount of indebtedness due the secured creditor, the past and projected profit margins of the debtor and the probable feasibility of the debtor's Chapter XI plan for rehabilitation. In considering these factors, the Bankruptcy Court must weigh the importance of the property to the Chapter XI proceedings versus the interests of a creditor in its security and, based on that balancing, must decide whether to continue, terminate or modify the automatic stay of proceedings.

■ The Court finds that the Bankruptcy Court did not err in concluding that the property in question is essential to the rehabilitation of the debtor or to the liquidation of its estate. As the Court stated in January, 1978:

"It is evident to this Court that any successful rehabilitation of the debtor in Chapter XI would require the property in question to remain under the power of the Bankruptcy Court. It is equally evident that A–M has been deprived of its ability to recover any monies expended to

---

1. The specific delays which occurred in the Bankruptcy Court are more fully set forth in the Court's January 24, 1978 opinion. *In the*

*Matter of White Birch Park*, 443 F.Supp. at 1344.

the debtor, whether fraudulently or not. Therefore, it becomes paramount for the Bankruptcy Court to carefully consider not only the equities of both parties in the property but also all other relevant factors when formulating any possible relief.

Due to the debtor's allegations of fraud in this transaction and due to the Bankruptcy Court's jurisdictional inability to set aside or, otherwise, affect A–M's secured claim against the debtor in a Chapter XI proceeding, the Bankruptcy Court could properly modify its stay of action to permit A–M to pursue its foreclosure action in this Court with the proviso that the stay would be continued against any execution or any enforcement of any favorable judgment. Such a modification would allow White Birch Park an opportunity to fully and properly litigate its claim of fraud against A–M during the pendency of the Chapter XI arrangement of the debtor's unsecured creditors."

443 F.Supp. at 1346.

The Bankruptcy Court followed the suggestions of the District Court and modified the automatic stay of proceedings to permit A–M to proceed on its foreclosure action. This Court concurs in that result as it is in the interests of both parties.

In reaching its result, the Bankruptcy Court found that A–M was a totally secured creditor, as the value of the property in question exceeded the net monies received by debtor from A–M. The record reflects conflicting testimony and evidence in this regard and the Court cannot conclude that the finding is clearly erroneous. Bankruptcy Rule 810.

■ The Bankruptcy Court also stated that the debtor would be able to file a feasible plan under Chapter XI with construction financing. Whether or not the debtor can obtain construction financing and file a feasible plan is a matter of conjecture; it was, however, a permissible factor to consider in light of A–M's complaint for relief from the stay of proceedings.[2] This Court previously analogized a hearing under Bankruptcy Rule 11–44(d) with a hearing for preliminary injunction under F.R.Civ.P. 65(b). 443 F.Supp. at 1345 citing Collier on Bankruptcy 11–44.05 pp. 11–44–22 to 11–44–25 (14 Ed. 1976). In a hearing for a preliminary injunction, the Court must consider a party's likelihood of success on the merits as a condition to preliminary relief. *Virginia Petroleum Jobbers Assoc. v. Federal Power Comm.*, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958). In the same fashion, the Bankruptcy Court considered the likelihood of a successful rehabilitation of the debtor in the instant case.

■ Accordingly, the Court cannot conclude that the Bankruptcy Court's finding as to probable feasibility of a Chapter XI plan was improper or outside the scope of remand.

The Court finds little merit in A–M's contention that the Bankruptcy Court disregarded its equities as mandated by this Court. The Bankruptcy Court modified the automatic stay to permit A–M to proceed with its foreclosure action in this Court. Although the modification of the stay of proceedings prohibits any execution or any enforcement of a favorable judgment by A–M, A–M would not be precluded from seeking a termination of the stay if or when it procures a favorable judgment.

The Court will affirm the modification of the automatic stay granted by the Bankruptcy Court and will vacate its Order staying proceedings entered on September 30, 1976 with the same proviso set forth by the Bankruptcy Court. The Court finds that it is unnecessary to discuss the remaining collateral issues raised by A–M; that the action contained in the Opinion of the Bankruptcy Court does not "invade the prerogatives of this Court."

The issue of compensation to the individual debtors will be more thoroughly discussed in the Chapter XIII appeal.

---

**2.** See, *In the Matter of Jacobsen J–J Ranch Inc.,* 4 Bankruptcy Ct Dec 245 (1978) and cases cited therein.

## THE CHAPTER XIII APPEAL

The Chapter XIII petition filed jointly by the debtors Bus White and Doris Marie White on June 10, 1976[3] was originally ordered dismissed by this Court on January 24, 1978.. But, as stated, *supra,* the Court chose to reverse itself and remand the Chapter XIII petition to the Bankruptcy Court for additional fact finding on the status of the debtors as wage earners.

On remand, the Bankruptcy Court concluded that the individual debtors were wage earners based upon the services each performed for the Chapter XI estate of White Birch Park. The Bankruptcy Court further found that debtor Bus White should receive a gross salary of $222.80 per week and debtor Doris Marie White a gross salary of $100.00 per week.

On appeal, A–M contends that, as the debtors had filed a notice of appeal to the Sixth Circuit Court of Appeals, the District Court had no jurisdiction to rehear the Chapter XIII appeal, to reverse its dismissal of the Chapter XIII petition or to remand the matter to the Bankruptcy Court. Based on those contentions, A–M asserts that the opinion of the Bankruptcy Court on remand is meaningless. In the alternative and if the District Court had jurisdiction to rehear and remand the Chapter XIII proceedings, A–M contends that the Bankruptcy Court did not follow the mandate of the District Court.

In regard to A–M's first contention, F.R. Civ.P. 60(b) permits the Court to relieve any party from a final judgment upon such terms as are just. The Court's decision to rehear the Chapter XIII appeal was due to facts not previously before the Court and the possible undue hardship the individual debtors would suffer if the Chapter XIII petition was dismissed without a complete record. The Court's decision to remand also reflected the continued intention of the Congress and the continued opinion of the judiciary that Chapter XIII and the term "wage earner" should be liberally construed to encourage a greater utilization of the Wage Earners' Plan. 1959 U.S.Code Congressional and Administrative News p. 1446–51; *In Re Reed,* 368 F.Supp. 615, 617 (E.D.Va. 1968).

A–M places much stress on the fact that a notice of appeal had been filed by the debtors and that the Court's remand improperly disturbed the finality of the January 24, 1978 judgment.

F.R.Civ.P. 60(b), however, is silent as to whether a district court can grant relief from judgment after a notice of appeal has been filed. Compare, F.R.Civ.P. 60(a). Wright & Miller, *Federal Practice and Procedure* sets forth a history of the practice under F.R.Civ.P. 60(b) and finds that, where circumstances not previously known to either the appellate court or the district court exist, the district court is much better equipped to supplement the record, to mitigate delays and expense of litigation and to possibly decrease the burden on the appellate court. Wright & Miller, *Federal Practice and Procedure,* § 2873, pp. 263–270 (1973) and cited with approval in *Standard Oil Co. of California v. United States,* 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976).

■ The Court finds that the interests of justice were properly served by the remand of the Chapter XIII proceedings. The remand gave the Bankruptcy Court an opportunity to supplement the record in a timely fashion with minimal prejudice to A–M.

Accordingly, the Court rejects A–M's first contention that the Court was without jurisdiction to remand the Chapter XIII proceedings to the Bankruptcy Court.

A–M further contends that the Bankruptcy Court failed to comply with this Court's instruction on remand of the Chapter XIII proceedings. Specifically, A–M asserts that the Bankruptcy Court should have dismissed the Chapter XIII petition as the individual debtors were not receiving a sal-

---

**3.** The Court acknowledges that the correct date of filing the Chapter XIII petition is June 10, 1976 and not July 30, 1976. The history of the Chapter XIII proceedings is more fully set forth in the Court's January 24, 1978 opinion. *In the Matter of White Birch Park,* 443 F.Supp. at 1346–47.

ary on the date the Chapter XIII petition was filed.

The record reflects that the debtors' petition was filed on June 10, 1976 and that debtors received their first salary from the Chapter XI estate on June 18, 1976. A–M concludes that, as the debtors were not drawing a wage on June 10, 1976, the debtors cannot be considered wage earners within the meaning of the Bankruptcy Act.

■■ A wage earner is an individual whose principal income is derived from wages, salary or commissions. 11 U.S.C. § 1006(8). The purpose of Chapter XIII is to provide a vehicle for relief and for rehabilitation to persons dependent upon their earnings from personal services to effectuate a composition with creditors, or to procure extensions of time to pay debts, or both. See *Hallenbeck v. Penn Mutual Life Insurance Co.*, 323 F.2d 566, 570 (CA4, 1963). Further, Chapter XIII contemplates a rehabilitation of a wage earner through a composition of his or her creditors, or through extensions of time to pay debts, or both out of *future* earnings. 11 U.S.C. § 1023 (emphasis added). Although the date of the filing of the Chapter XIII petition is a pivotal date, the Court must review all the facts before concluding that the Bankruptcy Court erred in finding the debtors capable of claiming wage earner status.

Debtor Bus White works forty-five (45) to fifty (50) hours a week for the Chapter XI estate performing various rent collection and maintenance functions. Debtor Doris Marie White works forty (40) hours a week for the Chapter XI estate performing various office and bookkeeping functions. Both debtors are "on call" on a twenty-four (24) hour basis to service the needs of the mobile home tenants. The debtors did not draw a wage or a salary until after the Chapter XI petition was filed on June 11, 1976. In the Chapter XI petition, debtors originally claimed a gross salary of $387.60 per week

and $170.00 per week respectively. The record subsequently reflects that the debtors did not draw that entire amount.

The Bankruptcy Court has ordered that the debtors receive the gross sums of $222.00 per week and $100.00 per week respectively as compensation for their services to the Chapter XI estate. The Bankruptcy Court has also appointed a receiver for the Chapter XI estate to supervise the operation of White Birch Park by the debtors in possession.

Thus, the difficulties which the Court expressed in its initial opinion of January 24, 1978,[4] are not present and appropriate safeguards have been implemented by the Bankruptcy Court to prevent the unchecked dissipation of the Chapter XI estate.

■ The fact that debtors did not receive their first salary check until June 18, 1976, eight days after the Chapter XIII petition was filed, is not sufficient cause for this Court to order the dismissal of the Chapter XIII petition. It is evident to the Court that the salary drawn by the debtors on June 18, 1976 was compensation for the services the debtors performed at White Birch Park for the period between June 10, 1976 and June 18, 1976.

■ Rehabilitation under Chapter XIII is to be from future earnings. 11 U.S.C. § 1023. The Court finds that sufficient facts are presently in the record to establish wage earner status for debtors and that the decision of the Bankruptcy Court in that regard is not clearly erroneous.

■ In regard to the amount of compensation to the debtors, the Court finds that the sums authorized by the Bankruptcy Court are reasonable for the services performed by the debtors. It is the continuing duty of the receiver to make certain that the salaries paid to the debtors is commensurate with their personal services to the Chapter XI estate.

**4.** "It is apparent that the debtors began to receive a sizeable income from White Birch Park, a business in serious financial trouble, at a point in time when the debtors themselves were contributing fewer personal services to it and becoming more and more dependent upon it for their livelihood. It is entirely possible that the debtors, as debtors in possession and in control of the Chapter XI estate, could pay out salaries to themselves and not render any services to White Birch Park." *In the Matter of White Birch Park*, 443 F.Supp. at 1348.

The Court, however, will direct the Bankruptcy Court to reopen the record to permit A–M to examine debtor Bus White concerning his relationship with Urban Excavating Company.[5] The Bankruptcy Court has a duty to inquire into the proprieties of debtor Bus White working for Urban Excavating without compensation while, at the same time, borrowing the sum of $2,000.00 from Urban Excavating.

Based upon those inquiries, the Court finds that the Bankruptcy Court is capable of correcting any impropriety.

The Court will affirm the findings of the Bankruptcy Court on remand and will direct the Bankruptcy Court to reopen the proceedings for the limited purpose discussed above.

As stated above, the Court hereby AFFIRMS the modification of the automatic stay of the foreclosure proceedings as granted by the Bankruptcy Court and VACATES its Order staying the foreclosure proceedings entered September 30, 1976.

The Court further AFFIRMS the findings of the Bankruptcy Court as to the wage earner status of debtors Bus White and Doris Marie White and as to the compensation which debtors are entitled to receive for their personal services to the Chapter XI estate.

The Court further DIRECTS the Bankruptcy Court to re-open its proceedings to inquire into the relationship between debtor Bus White and Urban Excavating Company.

IT IS SO ORDERED.

---

5. Urban Excavating Company is a company owned by the sons of debtor Bus White. The company purchased its equipment from White Excavating Company which was principally owned by debtor Bus White.