In re Daniel R. LEAVELL, Debtor.

The NORTHERN TRUST COMPANY, Movant,

v.

Daniel R. LEAVELL, Respondent.

Bankruptcy No. 85–40274.

United States Bankruptcy Court, S.D. Illinois.

Sept. 6, 1985.

Gregory D. Willard, Carl Spector and Victoria J. Hennelly, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., Terry R. Black, Campbell, Furnall, Moore & Jacobsen, Mt. Vernon, Ill., for movant.

Brent D. Holmes, Harlan Heller, Ltd., Mattoon, Ill., Larry Battershell, Robinson, Ill., for respondent.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL ORDER OF COURT

J.D. TRABUE, Bankruptcy Judge.

At East St. Louis, in this District, this matter having come before the Court for a hearing on August 30, 1985, on the *Motion For Relief From Automatic Stay, Or In The Alternative, For Adequate Protection, And For Order Denying Use Of Cash Collateral And Requiring Segregation of Cash Collateral* filed by The Northern Trust Company ("Northern Trust"), both parties being represented by counsel, evidence having been adduced and arguments having been presented to the Court, the Court makes the following findings of fact and conclusions of law:

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the companion general order of the United States District Court for the Southern District of Illinois, as this proceeding arises in the Chapter 11 case of the above debtor.

2. As of the date of the Chapter 11 petition (July 17, 1985), debtor was indebted to Northern Trust in the aggregate amount of $16,841,482.45 (the "Debt").

3. The Debt is secured by first liens on the debtor's oil and gas leases, equipment, inventory and accounts receivable, together with any and all products and proceeds thereof.

4. Debtor presented conflicting evidence as to the value of the oil and gas leases that secure the Debt. Debtor testified that the leases have a value of $1,500,-000 as of the petition date. Debtor further testified, however, that the value would be the same after five years of continuous extraction of oil from the leases. For the reasons discussed below the Court need not adjudicate the value of the leases for purposes of ruling on the instant motion.

5. Debtor has failed to file any accountings with the Court as required by the Court's Order of July 19, 1985, and 11 U.S.C. § 363(c)(4) with respect to segregation and accounting of cash collateral.

6. Debtor has failed to file any reports as required by the Court's Order of August 9, 1985, with respect to interim adequate protection of Northern Trust's collateral, but on August 15, 1985 filed its objection to the underlying motion of Northern Trust Company and motion to vacate the aforesaid order.

7. Debtor has received as much as $100,000.00 post-petition. Debtor has failed to comply or to attempt to comply with § 345 of the Bankruptcy Code with respect to the deposit and investment of those funds.

8. Debtor failed to timely comply with the Court's Order requiring the filing of the debtor's Statement of Affairs and Schedules of Assets and Liabilities, and only filed such documents on August 29, 1985—one day before the hearing on this matter.

9. Debtor has failed to file any operating reports with this Court as required by Bankruptcy Rule 2015.

10. The debtor has failed to provide adequate protection to Northern Trust and has shown no feasible way in which he can provide same.

11. As of the first week of August, 1985, debtor shut down all operations of his wells.

## CONCLUSIONS OF LAW

1. Northern Trust asserted two independent grounds in its motion for relief from the automatic stay. The first is that it is entitled to relief from the stay "for cause" as a result of the debtors' alleged misconduct and bad faith. In view of the complexity of the case, the fact that it was only filed on July 17, 1985, and the further fact that the debtor has filed objections to the ex parte orders requiring filings of certain reports, the Court is of the opinion that it is premature and unreasonable to allow Northern Trust's motion on these grounds. However, the Court is of the opinion that Northern Trust is entitled to relief from the automatic stay on the ground that its security interests are not being adequately protected by the debtor.

2. The directive of the Code to the Court that the automatic stay must be terminated unless the debtor provides adequate protection is nondiscretionary and mandatory. 11 U.S.C. § 362(d)(1). The debtor bears the burden of proving that the collateral is being adequately protected. 11 U.S.C. § 362(g). On the issue of adequate protection, the Bankruptcy Code "places a high burden of proof on the party requesting the use of cash collateral." In re Sheehan, 38 B.R. 859, 868 (Bankr.S.D. 1984).

3. "The secured creditor's right to take possession of and sell collateral on the debtor's default has substantial, measurable value. The secured creditor bargains for this right when it agrees to extend credit to the debtor and both parties consider the right part of the creditor's bargain. The right constitutes an 'interest in property' that is 'created and defined by state law,' and we are aware of no federal interest that requires this right of the secured creditor to go unprotected 'simply because an interested party is involved in a bankruptcy proceeding.'" In re American Mariner Industries, Inc., 734 F.2d 426 (9th Cir.1984).

4. When requesting Court authorization for expenditure of cash collateral, a debtor must prove by clear and convincing evidence that the secured creditor will realize the value of its bargain in light of all the facts and circumstances of the case. In re Sheehan, supra at 868.

5. Debtor concedes that Northern Trust is entitled to maintenance of the petition-date value of the oil and gas leases. These elements of adequate protection are well-grounded in the Code and recognize a secured creditor's right to be compensated for the time value of its money when it is deprived of its right to immediate realization of its interests in collateral. See, In re American Mariner Industries, Inc., supra.

6. In addition to opposing Northern Trust's request for relief from the automatic stay, debtor requested authorization at the hearing to spend Northern Trust's cash collateral in the amount of $65,000 per month for operating expenses.

7. In order to pay Northern Trust interest on the petition-date value of the leases, debtor proposes to pay Northern Trust a portion of the oil run proceeds on which Northern Trust already has a lien. Debtor has not and obviously cannot provide adequate protection of the $65,000.00 in cash collateral that he seeks to spend per month. In addition, debtor is unable to maintain the petition-date value of the leases, since debtor proposes to deplete those very assets on a regular basis.

■ 8. Debtor's proposal to pay interest on the petition-date value of the leases by paying a portion of the oil run proceeds to Northern Trust does not constitute adequate protection. To the contrary, by depleting the oil in the ground for purposes of paying interest, debtor necessarily is reducing the petition-date value of the leases. Therefore, debtor's proposal does not constitute adequate protection under § 361 of the Bankruptcy Code. Only where a sufficient equity cushion exists have courts found that the collateral itself can provide adequate protection to a secured creditor. No equity cushion exists in this case.

■ 9. Similarly, with respect to debtor's request at the hearing for expenditure of $65,000 per month of Northern Trust's cash collateral for operating expenses, debtor has not presented any proposal to the Court for adequate protection of Northern Trust's interest in that cash, let alone a proposal that would provide Northern Trust with the indubitable equivalent of that cash. *See,* 11 U.S.C. § 361(3); *In re Murel Holding Corp.,* 75 F.2d 941 (2d Cir. 1935). In short, debtor asks that he be relieved from compensating Northern Trust for such a taking. Were such a taking sanctioned by the Code or the Court, it would run directly contrary to Northern Trust's Fifth Amendment rights in its collateral as enunciated in *Wright v. Union Central Life Insurance Co.,* 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940) and *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935).

10. By definition, an oil lease in operation is a depleting asset. Therefore, debtor's intention to operate the leases will necessarily result in a depletion in the reserves and consequently a decline in the value of the leases underlying those reserves. If debtor wishes to prevent the automatic stay from being terminated the debtor must propose a satisfactory means for maintaining the petition-date value of the leases against this depletion and decline, *in addition to* the monthly interest payments, which debtor concedes he must make. No such proposal has been made.

11. The legal inadequacy in debtor's proposal for adequate protection can best be seen in the following example. On the date of the petition, the value of a secured creditor's lien in crops is $100. In order to prevent the automatic stay from being terminated, the debtor must maintain the petition date value of $100 and pay interest on the $100 secured claim at a rate, for example, of 12% per annum. Debtor in this case concedes these requirements. If the debtor sells one dollar's worth of crops per month to pay the accruing interest on the secured claim, the debtor has failed to maintain the petition-date value of the crops, *i.e.,* $100. Such a proposal would not constitute adequate protection within the meaning of 11 U.S.C. § 361 and would not be sufficient to prevent termination of the automatic stay for lack of adequate protection under 11 U.S.C. § 362(d)(1)— only *one* part of the two part requirement would have been met. In addition, if the debtor sought to use cash collateral in the hands of the secured creditor for purposes of obtaining the $1.00 per month necessary to pay interest, the secured creditor would be entitled to additional adequate protection to compensate the creditor for the taking/depletion of that cash collateral.

12. Even if the Court were to accept debtor's value of $1.5 million for the oil and

gas leases, debtor cannot possibly maintain the petition-date value of $1.5 million if, as debtor admits, he must deplete and sell the oil in order to pay the interest accruing on the $1.5 million. Such a scheme does not provide the adequate protection to which Northern Trust is statutorily and constitutionally entitled and which debtor must provide if he is to enjoy the protections of the automatic stay.

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the automatic stay of 11 U.S.C. § 362(a) is hereby terminated as it affects Northern Trust and its security interests described herein.