**In re McCOMBS PROPERTIES VI, LTD., a California limited partnership, Debtor.**

**McCOMBS PROPERTIES VI, LTD., a California limited partnership, Movant,**

**v.**

**FIRST TEXAS SAVINGS ASSOCIATION Respondent.**

**Bankruptcy No. SA 87–01380 JR. Ref. No. M8–0232 JR.**

United States Bankruptcy Court, C.D. California.

June 13, 1988.

---

Jeffrey W. Broker of Lobel, Winthrop and Broker, Irvine, Cal., for debtor.

Hillary R. Willett of Buchalter, Nemer, Fields & Younger, Newport Beach, Cal., for defendant.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

Debtor brought this motion for authorization to use cash collateral pursuant to § 363(c)(2)(B) of the Bankruptcy Code (the "Motion"). I held hearings on the Motion on February 23 and March 31, 1988. I awarded interim use of cash collateral and took the matter under submission to determine whether long term use of cash collateral is justified in light of all the circumstances.

### JURISDICTION

This court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(a) (the district courts shall have original and exclusive jur-

isdiction of all cases under Title 11), 28 U.S.C. § 157(a) (authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district) and General Order No. 266, dated October 9, 1984 (referring all Title 11 cases and proceedings to the bankruptcy judges for the Central District of California). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M).

## STATEMENT OF FACTS

Debtor filed its petition in Chapter 11 on March 9, 1987. Since then, it has been operating as a debtor in possession. The case has progressed to the point where debtor has obtained disclosure statement approval and is now seeking plan approval from its creditors. The confirmation hearing is scheduled for August 5, 1988. The purpose of the Motion is to use rental income from the Copenhagen Apartments (the "Property") located in Dallas, Texas. According to debtor, the Property is necessary for its reorganization efforts.

Debtor needs the use of the rental and other income from the Property to pay the operating expenses of the Property and protect the Property from further deterioration. Debtor is willing to remit any income in excess of the operating expenses to First Texas.

When the petition was filed, First Texas had an unperfected security interest in rents and profits from the Property. Initially, debtor and First Texas stipulated to the use of the rents and profits from the Property (the "Stipulation"). However, First Texas was unwilling to extend the Stipulation necessitating a hearing before me on November 20, 1987. At that hearing, I approved the use of rents through March 1, 1988 subject to certain payments being made to First Texas on a monthly basis (the "November order") Debtor made all payments required by the November order. However, according to the declaration of Mr. Richard Kelly, debtor has to perform certain renovation work in order to bring 39 units up to occupancy standards. The renovations required included the installation of stoves, dishwashers and refrigerators. An additional 60 units require standard turnaround work including the shampooing of carpets, painting and cleaning. According to Kelly, if this work is done, the lease rate on the Property should increase from 57% to 85%. This would result in an additional $22,000 in monthly revenues. Because debtor had to make monthly payments to First Texas under the Stipulation and November order, the Property deteriorated, the lease rate declined and monthly revenues decreased. Kelly declares that if the proposed maintenance work is performed, the net operating income of the Property can be increased $10,000 per month within three to four months.

First Texas replies that it is unwilling to consent to the use of the rents and profits from the Property which it claims as its "cash collateral" unless debtor makes monthly payments. At the end of March, debtor owed First Texas approximately $2.5 million. Daily interest on the indebtedness is approximately $830. First Texas claims that the income from the Property has decreased during the period of June 1987 to March 1988 from approximately $67,000 to $45,000. First Texas submitted an appraisal performed in May 1987 listing the value of the Property at $3,025,000. That appraisal was later updated and reduced in March 1988 to $2,875,000. Based on these facts, First Texas contends that it is not adequately protected unless it receives monthly payments.

In response, Debtor contends that First Texas is adequately protected because the Property has a substantial equity cushion. Debtor also submitted an appraisal estimating the value of the Property at $3,750,000.

I allowed debtor the interim use of cash collateral to pay operating expenses provided any excess was remitted to First Texas. I took the matter under submission to determine if an equity cushion is an appropriate method of adequate protection for the use of cash collateral under § 363 of the Bankruptcy Code.

## DISCUSSION

First Texas opposes debtor's request to use its cash collateral primarily because its

interest in the cash collateral is not adequately protected. Debtor retorts that rental income from the Property is not cash collateral of First Texas and even if it is, First Texas' interest in the alleged cash collateral is adequately protected by reason of the equity cushion in the Property.

In support of its contention that the rental income is not cash collateral, debtor argues that First Texas did not perfect its security interest in the rental income. Debtor anticipates First Texas' response that the filing of its notice under § 546(b) of the Bankruptcy Code perfected its security interest in the rents by pointing out that a careful reading of § 546(b) and the legislative history clearly shows that Congress intended to limit the application of that section to perfection opportunities under the Uniform Commercial Code (namely §§ 2–702, 9–301). However, debtor acknowledges a substantial body of law that holds that a creditor may perfect its security interest in rental income by filing a § 546(b) perfection notice. This is the law in the Fifth and the Ninth Circuits. In *In re Casbeer*, 793 F.2d 1436 (5th Cir.1986), the court specifically recognized perfection by the § 546(b) post-petition notice. *Id.* at 1443. In fact, the court accepted the creditor's filing of motions to lift the automatic stay as sufficient diligent action to perfect its interest in the rents. In *In re Johnson*, 62 B.R. 24 (9th Cir. BAP 1986), the court did not agree with *Casbeer* that the filing and obtaining of relief from stay was sufficient action to perfect the creditor's interest in rents. *Id.* at 28. However, the court listed the standard methods for perfection as including the giving of the § 546(b) notice, thereby accepting this method of perfection. *Id.* at 27. These cases control my finding that the giving of the § 546(b) notice perfected First Texas' security interest in the cash collateral effective as of the sending of the notice.

Anticipating my rejection, debtor argues that § 547 of the Bankruptcy Code voids the perfection of First Texas' security interest in the cash collateral. Debtor points out that § 546(b) specifically exempts perfection under § 546 from attack under §§ 544, 545 and 549 of the Bankruptcy Code. Without the exemption, such post-petition perfection may be avoidable under these sections. Debtor stresses that perfection under § 546(b) is not exempted from attack under § 547 of the Bankruptcy Code. According to debtor, to the extent § 547 applies, the transaction can be set aside. Debtor argues that the elements of a preferential transfer are present here. Section 547(b) provides:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>
>   (A) on or within 90 days before the date of the filing of the petition; or
>
>   (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
>   (A) the case were a case under Chapter 7 of of this title;
>
>   (B) the transfer had not been made; and
>
>   (C) such creditor receive payment of such debt to the extent provided by the provisions of this title.

Debtor maintains that the first three elements of the test are satisfied because there is a transfer (1) to and for the benefit of First Texas, (2) on account of an antecedent debt, (3) while debtor is insolvent. Debtor says that the transfer also satisfies the timing requirement because under § 547(e)(2)(C) the transfer is deemed to be made immediately before the date of filing. Section 547(e)(2)(C) provides that a transfer is made

> immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—

(i) the commencement of the case; or

(ii) 10 days after such transfer takes effect between the transferor and the transferee.

Since the transfer here was unperfected when the petition was filed, the transfer is considered to have occurred at a point immediately before bankruptcy. Thus, the transfer occurred within 90 days before the filing of the petition. The last requirement necessitates a showing that the transfer will result in First Texas receiving more than it would in a Chapter 7 liquidation. This may or may not be the case here. First Texas did not respond to the § 547 argument.

The § 547 preference allegation must be brought as an adversary proceeding in accordance with Part VII of the Bankruptcy Rules. Since the Motion is a contested matter under Rule 9014, the issue is not properly before me. Accordingly, I will not rule on the § 547 issue. However, it may be an appropriate basis for avoiding the security interest of First Texas if brought as an adversary proceeding. I believe debtor has already taken action to file the appropriate complaint.

■ Debtor next contends that First Texas' interest in the cash collateral is adequately protected by an equity cushion of approximately $1.0 million. Precedent reveals a split of authority on this issue. Section 363(e) provides in relevant part: "... on request of an entity that has an interest in property used, sold, ... by the trustee, the court shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." Debtor maintains that the concept of adequate protection under § 363 is the same as under § 362. Debtor further asserts that courts have generally recognized an equity cushion in the underlying property held by the debtor as satisfying the requirement for "adequate protection". See *In re Mellor*, 734 F.2d 1396 (9th Cir. 1984); *In re Carson*, 34 B.R. 502 (D.C.Kan. 1983); *In re Johnston*, 38 B.R. 34 (Bankr. D.Ver.1983). First Texas retorts that these cases involve § 362 and not § 363.

First Texas cites *In the Matter of Earth Lite, Inc.*, 9 B.R. 440 (Bankr.M.Fla.1981), for the view that adequate protection under § 363 should be approached differently than § 362 especially when debtor attempts to use an equity cushion for adequate protection. As the court stated, "this court is satisfied that due to the different nature of the proceeding and due to the different collateral involved the cases cited are not controlling and the debtor, before it is authorized to use cash collateral, cannot rest on its equity cushion, but must offer more to the secured party before it is entitled to use cash collateral." *Id.* at 443. Despite a significant equity cushion, the court required the debtor to make some payments to the secured party.

In support of its perspective, debtor cites *In re Harrington & Richardson, Inc.*, 48 B.R. 431 (Bankr.D.Mass.1985). In *Harrington*, the creditor had a security interest in accounts receivable, inventory, machinery and equipment and certain real estate. Combining these assets, the court found the liquidation value of the combined assets to be $4.9 million providing an equity cushion of at least $203,000. The court also found that the assets were not depreciating in value. The court then recognized that one method of providing adequate protection is to show sufficient "equity cushion", citing *Mellor, supra, Carson, supra, Johnston, supra*. The court acknowledged that it must protect against any rapid dissipation of the equity cushion and suggested that periodic cash payments could be made to protect against any decrease in the value of collateral during the debtor's use. Approaching the concept of adequate protection with flexibility, the court authorized debtor's use of cash collateral for a limited period of time without interim payments.

Since these decisions, we have the Supreme Court's view of adequate protection as expressed in *United States Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. ——, 108 S.Ct. 626, 98 L.Ed 2d 740 (1988). In *Timbers*, the Supreme Court held that the "interest in property" protected by § 362(d)(1) does not include a secured party's right to immediate foreclosure. *Id.* 484 U.S. at ——, 108

S.Ct. at 629, 98 L.Ed.2d at 748. The Court acknowledged that a creditor's interest in property includes "the right of a secured creditor to have the security applied in payment of the debt upon completion of the reorganization; and that that interest is not adequately protected if the security is depreciating during the term of the stay." *Id.* The Court then analyzed the Code as a whole to support its decision. For example, it reviewed § 506(a) and determined that the phrase "value of such creditor's interest" means "the value of collateral" and the phrase "value of such entity's interest" in § 361(1) and (2) means the same thing. *Id.* 484 U.S. at ——, 108 S.Ct. at 630, 98 L.Ed.2d at 749. The Court was also influenced by the fact that § 506(b) denies interest to the undersecured creditor and allows post-petition interest to the oversecured creditor to the extent the value of the security covers the claim. The Court further found that the creditor's interpretation under § 362(d)(1) was structurally inconsistent with § 552 of the Bankruptcy Code. The Court believed that § 552 could be circumvented by an undersecured creditor who lacked a perfected security interest and demanded the "use value" of his collateral under § 362. The Court acknowledged that § 506(b) gives the oversecured creditor, despite lack of compliance with the conditions of § 552, a priority over unsecured creditors, but as the Court stated "that does not compromise the principle of § 552, since the interest payments come only out of the 'cushion' in which the oversecured creditor does have a security interest." *Id.* 484 U.S. at ——, 108 S.Ct. at 632, at 750.

The analysis of the Supreme Court in *Timbers* is instructive here. The phrase "interest in property" in § 363(e) means the value of the collateral. That is the interest that I am required to protect. If that value is likely to diminish during the time of the use, adequate protection must be provided by debtor. As the Supreme Court stated in *Timbers*, "thus, it is agreed if the apartment project in this case had been declining in value petitioner would have been entitled, under § 362(d)(1) to cash payments or additional security in the amount of the decline, as § 361 describes." *Id.* 484 U.S. at ——, 108 S.Ct. at 629, at 748. Under § 361, adequate protection can be provided in the form of (1) periodic cash payments, (2) additional replacement liens to the extent the "use" results in a decrease in value of the creditor's interest in the property, or (3) granting such other relief as will provide the "indubitable equivalent" of the creditor's interest in the property.

I support the view that adequate protection under § 363 should be treated the same as under § 362. The Ninth Circuit in the § 362 context recognized in *Mellor, supra,* that an "equity cushion" is an acceptable method of adequate protection even though the approach is not specifically mentioned in § 361. 734 F.2d at 1400. The court even held that an equity cushion may serve as the sole basis for adequate protection. *Id.* I see no reason for treating an equity cushion differently when reviewing adequate protection under § 363.

I expect an argument can be made that *Timbers, supra,* requires a debtor to protect the secured creditor against any diminution of the cushion. In other words, debtor must adequately protect the full value of the security including the cushion. This view obviously would eliminate the use of an equity cushion as adequate protection.

I find this argument illogical and inconsistent with the Bankruptcy Code and the *Timbers* rationale. A secured creditor has no right to the equity cushion in its collateral. It only has a right to look to the collateral for payment of its claim "upon completion of the reorganization. It is *then* that he must be assured 'realization ... of the indubitable equivalent' of his collateral." *Timbers,* 484 U.S. at ——, 108 S.Ct. at 633, 98 L.Ed.2d at 752. The unsecured creditors and the debtor have rights to the cushion. Section 506(a) reinforces this view by limiting the secured status of a creditor to the lesser of the claim or the value of the collateral. Furthermore, § 506(b) requires any payment of interest on a secured creditor's claim during the bankruptcy to be taken from the cushion.

In other words, § 506(b) is an exception to the general rule that interest does not accrue on claims during a bankruptcy. As the Court stated in *Timbers*, "... § 506's use of terminology is its substantive effect of denying undersecured creditors postpetition interest on their claims—just as it denies *over*secured creditors postpetition interest to the extent such interest, when added to the principal amount of the claim, will exceed the value of the collateral. *Id.* 484 U.S. at ——, 108 S.Ct. at 630, 98 L.Ed.2d at 749. A secured creditor's rights to the cushion in bankruptcy are, therefore, confined to those rights specified in § 506 and no more. For these reasons, I reject any inference that *Timbers* limits the use of an equity cushion for adequate protection. To the contrary, by implication it supports such use.

■ In determining the need and sufficiency of adequate protection, I am guided by *In re Martin*, 761 F.2d 472 (8th Cir. 1985). The court stated

> In order to encourage reorganization, the courts must be flexible in applying the adequate protection standard. This flexibility, however, must not operate to the detriment of the secured creditor's interest. In any given case, the bankruptcy court must necessarily (1) establish the value of the secured creditor's interest, (2) identify the risks to the secured creditor's value resulting from the debtor's request for the use of cash collateral, and (3) determine whether the debtor's adequate protection proposal protects value as nearly as possible against risks to that value consistent with the concept of indubitable equivalence.

*Id.* at 477.

The maximum value of First Texas' interest is approximately $50,000 based on collections in December 1987 of $46,179. Logically, the value cannot be greater assuming the use terminated immediately following collection of the monthly rental and before any bills are paid. Although there is some risk that collections will decrease, that risk is minimal given Kelly's declaration that with appropriate repairs and renovations income will likely increase by $10,-000 in three to four months. If I use the updated appraisal of First Texas (fair market value of $2,875,000), there is an equity cushion of approximately $375,000 without deduction for closing costs. Deducting closing costs equal to 3% of the appraised value, the net equity cushion is approximately $289,000. Assuming no payment of interest on First Texas' claim, it will take approximately 760 days to absorb the equity cushion.

Even if there was no equity cushion, I am not convinced that gross rents will diminish over the foreseeable future and this is the risk requiring protection. Deterioration in rental income has already taken place. Use of the cash collateral for needed repairs and renovations should actually result in increased rentals. Debtor has committed to use the cash collateral to pay operating expenses and improve and maintain the Property with any excess income going to First Texas. By dedicating cash collateral for these purposes, debtor has substantially eliminated the risk of diminution of First Texas' interest in cash collateral. The more likely scenario is that cash collateral will increase.

■ Some courts have held that a higher standard of proof is required to establish adequate protection when cash collateral is being used. In *In re Leavell*, 56 B.R. 11 (Bankr.S.D.Ill.1985), the court stated that "when requesting court authorization for expenditure of cash collateral, debtor must prove by clear and convincing evidence that the secured creditor will realize the value of its bargain in light of all the facts and circumstances of the case." *Id.* at 13. I do not support the view that a higher standard of proof is required under § 363 than under § 362 or any other section in the Bankruptcy Code dealing with adequate protection. This court is required to find that adequate protection exists. Adequate protection is not meant to be a guarantee that the secured creditor will receive the value of its interest in the collateral. See *In re Elliott Lease Cars, Inc.*, 20 B.R. 893 (Bankr.D.R.I. 1982). Congress recognized this when it approved the superpriority provision under § 507(b).

In summary, debtor has the burden of proving by a preponderance of the evidence that First Texas is adequately protected against debtor's use of cash collateral. In accordance with *Timbers, supra*, the value of First Texas' security interest in the cash collateral is to be protected by debtor. Based on the evidence, the value of First Texas' interest in cash collateral is $50,000. Debtor proposes to protect this interest by using the rental income for operating expenses and repairs and renovations to the Property and remitting any excess to First Texas. In addition, debtor has demonstrated that an equity cushion of at least $289,000 exists to cover any risk that First Texas' interest in cash collateral will decline. Based on this offer of adequate protection by debtor, I find that debtor has satisfied the adequate protection requirements of § 363(e).

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. The within memorandum opinion shall constitute my findings of fact and conclusions of law.

### ORDER GRANTING DEBTOR THE USE OF CASH COLLATERAL

In accordance with the findings of fact and conclusions of law set forth in my memorandum opinion this date, it is

ORDERED that debtor is granted the use of cash collateral.