In re **GLASSTREAM BOATS, INC.,** Tax I.D. NO. 58–1471322 Debtor.

**Bankruptcy No. 89–70417–VAL**

United States Bankruptcy Court,
M.D. Georgia,
Valdosta Division.

Jan. 9, 1990.

**612**

Gus H. Small, Jr., Karen F. White, Atlanta, Ga., for debtor.

C. Edward Dobbs, Atlanta, Ga., for creditor.

## MEMORANDUM OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

These are Findings of Fact and Conclusions of Law on the Motion of the Debtor, Glasstream Boats, Inc. under § 363(c)(2) of the Bankruptcy Code for use of cash collateral belonging to the Creditor, Marine Midland Business Loans, Inc.

Debtor is a boat and trailer manufacturing company with manufacturing facilities in Georgia, Florida, and Arkansas. Creditor is conceded to have a properly perfected security interest in accounts receivable, inventory, work in process, some equipment, and proceeds thereof.

Shortly after this Chapter 11 case was filed, the court held a hearing on Debtor's Motion for Authority to use Cash Collateral. Debtor and Creditor entered into an agreement as to the use of the cash collateral in question, which was later made an order of the court. This order incorporated certain projections. When these projections were not met by Debtor, the parties entered into a modified arrangement, again with court approval. The Debtor failed to meet sales projections in the modified arrangement and the Creditor terminated its consent in accordance with the terms of the order. In direct violation of the court order, the Debtor refused to remit proceeds from C.O.D. sales of boats which had been the Creditor's collateral and filed a new motion with this court for authority to use this cash collateral and future cash collateral to be received from C.O.D. sales already made from which the cash was in transit and sales to be made in the future.

After a preliminary hearing, the court permitted some use of the cash collateral pending a final hearing. The court expressed concern over the failure of the Debtor to obey its prior order and over the failure of the Debtor to present satisfactory evidence of the value of the inventory and work in process.

A final hearing was held on January 2, 1990. At that time, evidence showed that the Debtor had again disobeyed an order of the court and had overspent for some categories of expenses. The only explanation was that the Debtor's president, Mr. A.L. Kirkland, had misunderstood the court's order.

The court's order was stated orally in the presence of Mr. Kirkland in such clear terms that it could not have been misunderstood by a person of ordinary intelligence. It was also reduced to writing in a very clear fashion and the Clerk's Office served a copy on the Debtor. As a result, the Creditor's collateral was reduced. The court can only conclude that the Debtor knowingly and intentionally violated a court order for the second time.

Nevertheless, the court was and is convinced that the best interests of the Debtor in Possession and this Creditor and the other Creditors is for the Debtor to continue in operation as a manufacturing facility. The Debtor's counsel has said that a denial of this motion would result in another shut down of the assembly line, which the court doesn't feel is in the best interest of either party. The court continued the interim cash collateral order for one more week in order to give in depth study to the evidence and the law before announcing a ruling.

Section 363(c)(2) of the Bankruptcy Code provides that the Debtor in Possession may not use cash collateral unless each entity that has an interest in the cash collateral consents or the court, after notice and a hearing, authorizes such use in accordance with the provisions of § 363 of the Code.

Section 363(c) provides that, at any time, on request of an entity that has an interest in property proposed to be used, the court

shall prohibit or condition such use *as is necessary to provide adequate protection of such interest.*

Section 363(*o*)(1) provides that in any hearing under § 363, the Debtor in Possession has the burden of proof on the issue of adequate protection. Adequate protection as used in § 363 is defined in § 361 to include the Debtor in Possession's making a cash payment or periodic cash payments to the secured party to the extent that the use of the property results in in a decrease in the value of the Creditor's interest in the property; providing an additional or replacement lien to the extent that the use results in a decrease in the value of the Creditor's interest in the property; or giving such other relief as will result in the realization by the Creditor of the indubitable equivalent of the Creditor's interest in the property.

■ So the test is not whether or not it is in the best interest of the Debtor and the secured Creditor, but whether or not the Debtor carries its burden to show that its use of the cash collateral will not reduce the value of the Creditor's interest in the property without providing adequate protection—the indubitable equivalent of the Creditor's interest in the property.

The Eleventh Circuit Court of Appeals in *In re George Ruggiere Chrysler–Plymouth, Inc.*, 727 F.2d 1017 (1984) stated that "when a creditor opposes a proposed use of cash collateral, the guiding inquiry is whether its security interests are 'adequately protected' absent the additional protection that the cash collateral would provide...."

"In determining whether a creditor's secured interests are so protected, there must be an individual determination of the value of that interest and whether a proposed use of cash collateral threatens that value." *Id.* at 1019.

Quoting from *Collier on Bankruptcy,* the court continued, "Though the creditor might not receive his bargain in kind, the purpose of the section is to insure that the secured creditor receives in value essentially what he bargained for." *Id.* at 1019–20.

■ Courts have split over the burden of proof that the Debtor must carry under this section. Some bankruptcy courts have required proof by clear and convincing evidence. *In re O.P. Held, Inc.*, 74 B.R. 777 (Bankr.N.D.N.Y.1987); *In re Leavell,* 56 B.R. 11 (Bankr.S.D.Ill.1985); *In re Sheehan,* 38 B.R. 859 (Bankr.D.S.D.1984).

However, this court believes the proper burden is preponderance of the evidence as stated by Judge Ryan in *In re McCombs Properties VI, LTD.,* 88 B.R. 261 (Bankr.C.D.Calif.1988).

In this motion, the Debtor asks for authority to use up to $175,000.00 per week of the Creditor's cash collateral to carry on its business operation. It asserts that the Creditor is undersecured, but put into evidence projections that purport to show that Creditor's cash collateral would *increase* as a result of the continued operation of the Debtor. Essentially, the Debtor proposes to take cash from sales of boats that are pledged to Creditor and use it to stay in operation, including creating new boats, selling them, and also purchasing new raw material inventory which would be subject to a post-petition replacement lien in favor of Creditor.

As "adequate protection" for the use of cash collateral, Debtor proposed:

(1) All sales would be C.O.D. absent further order of the court;

(2) It would collect prepetition accounts receivable and pay over to Creditor sums collected in excess of $592,000.00;

(3) It would sell prepetition finished inventory and remit the net proceeds to Creditor.

(4) Creditor would have a post-petition lien in all post-petition assets to extent of cash collateral used.

The use of cash collateral would be until further order of the court. At the hearing, Debtor agreed to continue daily reporting required by the temporary order.

■ Debtor's argument was that it should be permitted to use cash collateral as long as the value of Creditor's interest in its collateral doesn't decrease any fur-

ther. Basically, the court agrees with that proposition, but Debtor would have to provide safeguards so that Creditor, the court, United States Trustee and the Creditor's Committee could know whether or not that was happening.

Debtor's CPA's testimony was that they probably could do a monthly inventory, but could provide inventory figures no more often than monthly. Debtor could not provide the court with a base line to start from.

The court would need to have proof that on a day certain, the cash in bank and in transit was a sum certain and that on the same day, inventory was a sum certain. Reports as to cash and inventory would have to be made with regularity—certainly no less than weekly. At any time there was a decrease, the use of cash collateral would have to stop.

Debtor has been unable, despite pleas from the court, to provide such evidence and, based on the testimony, Debtor will be unable to do so for the foreseeable future. Therefore, the Debtor's request, as to post-petition inventory and cash proceeds is DENIED.

As to pre-petition inventory, the motion will be approved, if still requested. If Debtor wants to use proceeds of accounts receivable, the court will have to hear arguments on the terms of such use. Presently, the court does not see the justification for allowing Debtor to use accounts receivable proceeds up to $592,000.00 without payment to Creditor.

The court has been unable to find a value of the Creditor's collateral. The Creditor claims to be oversecured, based on the Debtor's schedules. Debtor argues that the Creditor is considerably undersecured, but has, as the court has stated, failed to carry its burden of proof as to the value of the collateral. The court directs the parties' attention to the Eleventh Circuit case cited earlier, *In re George Ruggiere Chrysler–Plymouth, Inc., supra,* for a discussion of the method of valuation for § 363 purposes. The court suspects by the standard of that case that the Creditor is considerably undersecured.

Debtor's attorney has said that a negative ruling would result in closing of the plant again. Creditor has stated that they would agree to continued use of cash collateral on certain conditions, to which the Debtor has not agreed.

As the court has previously stated, the court does not think that it is in either party's interest to close the plant again. The court does not suggest that Debtor should agree to every condition demanded by Creditor in closing argument, but is suggesting that the parties talk and try again to find some middle ground. Maybe a trustee or an examiner being put in with Debtor continuing to operate and use cash collateral is a possibility.

An order has been entered in accordance with this opinion.