**In re SENIOR CARE PROPERTIES, INC., Debtor.**

**Bankruptcy No. 91–07267–B.**

United States Bankruptcy Court, N.D. Florida, Tallahassee Division.

Feb. 25, 1992.

Russell S. Bogue, III, Tampa, Fla., for movant.

W. Kirk Brown, Tallahassee, Fla., for debtor.

Ashley Rusher, Winston–Salem, N.C., for Eastpoint.

### ORDER ON MOTION FOR RELIEF FROM STAY

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

This matter came before the Court on the motion of the creditor, NBD Trust Company of Florida, N.A., as trustee ("NBD"), for relief from the automatic stay. NBD initially moved for relief from the stay on August 29, 1991. After conducting a preliminary hearing, the Court continued the stay in effect pending the result of a final hearing. Prior to the final hearing, the parties reached an agreement, subject to the approval of the bondholders for which NBD is acting as trustee, whereby the debtor agreed to give NBD a replacement lien on all of the furniture, fixtures, and equipment at the facility. The bondholders would not consent to the agreement, which resulted in NBD moving for the rescheduling of a final hearing on the motion for relief from the stay. Having considered the argument of counsel and for the reasons set forth below, we find that NBD is not entitled to relief from the stay or additional adequate protection.

The debtor operates a nursing home in Franklin County, Florida. When it acquired the home in November, 1990, the debtor assumed all the obligations of the previous owner, Eastpoint. These obligations include a loan agreement, a mortgage and security agreement, and a collateral assignment of rents and leases, all held by NBD. As part of the sale price of the home, Eastpoint received a second mortgage that is subordinate to NBD's mortgage. Subsequent to the assumption of the liabilities, the debtor defaulted on its obligations to NBD. On June 12, 1991, the debtor filed for protection under Chapter 11 of Title 11, United States Code.

The parties stipulate that the value of the nursing home is $2,900,000 and that the liens on it amount to approximately $2,683,000, with approximately $2,270,000 owed to NBD and approximately $413,000 owed to Eastpoint. The debtor and Eastpoint previously entered into an adequate protection agreement, approved by Court order, whereby the debtor agreed to pay Eastpoint $5,933.22 per month. This is the same amount called for in the promissory note executed at the time of the transfer of the nursing home.

NBD recognizes that there is equity in the property and that the property is necessary for an effective reorganization. It has moved for relief from the stay under § 362(d)(1) which provides that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
>> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1). In the alternative to relief from the stay, NBD prays for adequate protection payments from the debtor.

The debtor's equity in the property is approximately $220,000, the value of the property less the total amount of the liens. NBD's equity cushion is approximately $530,000, the value of the property less its lien. NBD asserts that its interest is not adequately protected. It contends that it has an interest not only in the home, but also in the equity cushion that is being eroded by the post-petition accumulation of interest. Consequently, it seeks relief from the stay. The debtor contends that NBD's equity cushion is sufficient to adequately protect NBD's interest.

NBD's asserts two arguments that it is not adequately protected. First, it contends that the cushion is not sufficient to protect its interest. Second, as a secured creditor, it asserts an interest in the equity cushion that should be protected.

NBD contends that case law requires a minimum cushion to be between 20% and 40%. In this case, NBD's equity cushion is approximately 18% of the value of the property.

■ There are many cases where the percentage level of the equity cushion has been the determining factor as to whether a creditor was entitled to adequate protection. *See In re McKillips*, 81 B.R. 454, 458 (Bkrtcy.N.D.Ill.1987) (citing numerous cases). There is at least one case that holds that an oversecured creditor is only entitled to adequate protection when the value of the secured claim declines. *In re Lane*, 108 B.R. 6 (Bkrtcy.D.Mass.1989). Whether a creditor's interest should be adequately protected must be determined on a case by case basis rather than by mechanical application of a formula. *In re Kost*, 102 B.R. 829 (D.Wyo.1989). The circumstances of each case must be considered.

In *Kost*, where the equity cushion was 11.5%, the court considered that the collateral was deteriorating in value, there was no insurance, the debtor was unable to maintain the property, and the real estate market in the area was declining. Consequently, the court found that the secured creditor was not adequately protected. In *In re Strause*, 97 B.R. 22 (Bkrtcy.S.D.Cal.1989), the court considered the debtors' history of payment on the secured notes, when it determined that a 6% equity cushion was insufficient to adequately protect the creditor.

■ In this case, NBD is protected by an 18% equity cushion. The debtor has shown a reasonable likelihood of reorganizing, it is current with its real estate taxes and its payments to the second mortgage holders, and it has filed its plan of reorganization, albeit the day before the final hearing to lift the stay. Further, there has been no showing that the property is in disrepair or is in danger of deterioration. It appears that NBD is adequately protected by the $530,000 equity cushion.

Even if the equity cushion was not sufficient, there is some question whether an oversecured creditor would be entitled to periodic cash payments as adequate protection. Section 506(b) allows an oversecured creditor interest on its claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose. However, this allowance is limited to the difference between the value of the collateral and the amount of the claim. 11 U.S.C. § 506(b), *see also United Savings Assoc. v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). If periodic cash payments were permitted, it is conceivable that, over time, the secured creditor would be paid more than § 506(b) allows, unless, as one court suggests, the payments are taken from the creditor's cushion. *See In re McCombs Properties VI, Ltd.*, 88 B.R. 261 (Bkrtcy.C.D.Cal.1988); *see also* David Gray Carlson, *Oversecured Creditors Under Bankruptcy Code Section 506(b): The Limits of Postpetition Interest, Attorneys' Fees, and Collection Expenses*, 7 Bankr.Dev.J. 381 (1990). In his article, Carlson points out that *Timbers* would be violated if a creditor were to receive more payments than the total, original equity cushion. *Id.* at 384.

■ NBD also claims that secured creditors have an interest in the equity cushion. If it is recognized that a secured creditor does have such an interest, then, NBD argues, § 361(3) allows for adequate protection by providing the creditor the indubitable equivalent of its interest in the property. NBD's assertion of an interest in the equity cushion has been recognized, with-

out analysis, by at least one court. *In re Milleson*, 83 B.R. 696 (Bkrtcy.D.Neb.1988); *Matter of Underwood*, 87 B.R. 594 (Bkrtcy.D.Neb.1988). However, it has been rejected by another. *McCombs, supra.*

We recognize that an argument could be made that Justice Scalia's statement in *Timbers* that oversecured creditors have a perfected security interest in the cushion is dispositive of this issue. *See Timbers*, 484 U.S. at 374, 108 S.Ct. at 631. However, Justice Scalia's discussion relates to the entitlement of the secured creditor to the payment of interest to the extent of the value of the property. It does not suggest that the secured creditor is entitled to adequate protection of the entire cushion through periodic payments. Since any interest payments come out of the cushion, then to the extent payments are made prior to plan confirmation, the cushion available to that secured creditor is accordingly reduced.

In *McCombs*, the court found that the unsecured creditors and the debtor have rights to the cushion and the secured creditors' rights are confined to those rights specified in § 506. The court observed that if the debtor were required to protect the full value of the security including the cushion then the use of the cushion as adequate protection would be eliminated. We agree with the *McCombs* decision, and conclude that secured creditors do not have an interest in the equity cushion that would entitle them to adequate protection.

■ a substantially oversecured creditor is not entitled to adequate protection payments, it is not without remedy. In many instances involving oversecured creditors, debtors use the bankruptcy process to delay making payment to the oversecured creditor. Then, upon the oversecured creditor filing for relief from stay, the debtor will contend that there is equity in the property and that the creditor is adequately protected, therefore relief should be denied. However, § 362(d)(1) provides that relief may be granted "for cause." The delay in paying a creditor for an inordinate length of time has been recognized as a cause for relief. *See In re*

*Novak,* 121 B.R. 18 (Bkrtcy.W.D.Mo.1990); *In re A.J.N. Enterprises, Inc.,* 464 F.Supp. 394 (E.D.La.1978); *In re Empire Steel Co.,* 228 F.Supp. 316 (D.Utah 1964). Unreasonable delay in such instances can be unduly prejudicial to creditors. We agree with these cases and recognize that such delay to the prejudice of creditors is cause for relief from the stay.

Although NBD has not been paid for at least the eight months that this debtor has been protected by the bankruptcy code, it has failed to show that there has been any prejudice to creditors from the delay. Further, it appears that the debtor is moving toward the confirmation of a plan of reorganization.

NBD has failed to show that cause exists for lifting the stay or that it is entitled to further adequate protection. The replacement lien on all of the furniture, fixtures, and equipment at the facility is sufficient protection of NBD's interest. Accordingly, it is

ORDERED AND ADJUDGED that NBD's motion for relief from the automatic stay is denied.

DONE AND ORDERED.